### STATE v. ERNEST C. WILLARD.

(Filed 15 December, 1954.)

**1. Criminal Law § 79—**

The statement in the brief of the general questions involved on the appeal, without bringing forward or mentioning in the brief any of the exceptions taken during the trial or authority in support of any particular exception, is insufficient to bring up for consideration the matters to which the exceptions shown in the record relate.

**2. Automobiles § 30d: Criminal Law § 31h: Constitutional Law § 35—**

In a prosecution under G.S. 20-138 it is competent for an expert witness to testify as to the results of a test of the defendant's blood, based on a sample taken less than an hour after the alleged offense with defendant's consent, as to the alcoholic content of the blood. Constitution of North Carolina, Art. I, Sec. 11.

**3. Criminal Law § 31h—**

A lay witness is competent to testify whether or not in his opinion a person was under the influence of an intoxicant on a given occasion on which he observed him.

**4. Automobiles § 30d—**

Evidence that defendant was intoxicated within the purview of G.S. 20-138 while driving a vehicle on the public highways of this State *held* amply sufficient to be submitted to the jury even in the absence of expert testimony as to the alcoholic content of defendant's blood.

**5. Criminal Law §§ 50f, 81c (7)—**

In this prosecution for drunken driving, exception to the statement of the solicitor in his argument "Don't kill my child" is not sustained, since in the absence of the factual setting of the remark it is not made to appear that the argument was an abuse of fair debate and prejudicial.

APPEAL by defendant from *Fountain, S. J.,* at 15 February 1954 Term, of GUILFORD—Greensboro Division.

Criminal prosecution upon a warrant issued out of Municipal-County Court of the city of Greensboro on affidavit charging that on 6 October, 1953, defendant at and in Guilford County "did unlawfully, willfully operate a motor vehicle on a public highway while under the influence of whiskey, narcotics, or other intoxicating beverages, against the State in such case made and provided," etc., tried in Superior Court upon appeal

thereto by defendant from judgment of said municipal County Court aforesaid.

Plea: Not guilty.

Upon trial in Superior Court the State offered evidence tending to show that on afternoon of 6 October, 1953, defendant was at the stock sale yard on S. Elm Street Extension, a public thoroughfare, south of the city of Greensboro in Guilford County. Witnesses offered by the State expressed opinion that, judging from his appearance, his actions, the manner in which he ate popcorn, and odor of intoxicant on his breath, he was then under the influence of some intoxicant. The State's evidence also tended to show that around four o'clock in the afternoon, while he was in such condition, he drove his car away from the stock sale yard; that a deputy sheriff followed in a short time, and next saw defendant about three-quarters of a mile or a mile away,—his car being parked on the side of S. Elm Street in the city limits of Greensboro, near a pick-up truck, with which his car had had a slight contact; that in the opinion of the deputy sheriff defendant was then under the influence of some intoxicant; and he arrested defendant on offense with which he stands charged. And the evidence tends to show that a city police officer was called, and defendant was taken to the police station; that at the police station the policeman told defendant that "a man would give him a blood test if he wanted one"; that "defendant said he wanted a blood test"; and that "Mr. R. B. Davis, Jr., came and drew a blood sample from the defendant."

The State offered Davis as a witness, and after examination of him, the court found as a fact that he is an expert chemist and hematologist. Objection to such finding was not made by defendant. Thereupon Davis, as such witness, was permitted, over objection of defendant, to testify, briefly stated, that on afternoon of 6 October, 1953, in response to a call he went to the Greensboro Police Department, and there saw, and had a conversation with defendant, in which he, Davis, told defendant that he did not have to take the test unless he wanted it, that there was nothing mandatory about it, and that it would be at his expense; in reply to which defendant said he wanted a blood test; that thereupon at 4:40 p.m., he, Davis, drew from defendant a sample of blood, 10 ccs; that he then made an analysis of this blood in the Doctor's Laboratory, which he owns and operates, and which is located in Piedmont Memorial Hospital building in Greensboro, testing the blood for the presence of alcoholic content, and that point two one (.21) per cent of alcohol was found in the blood.

Further, the witness Davis testified that he had made a study over a period of time as to the effect of alcohol in the blood stream upon a human being; that he had studied medical and clinical texts on the subject; that the texts he has studied concerning the effect of alcohol on the

human being are recognized authorities on the subject; and that from his studies and tests and experience he thinks he is qualified to say how and in what manner alcohol affects the human being; that in his opinion defendant was under the influence of alcohol; that having more than point one five (.15) of alcohol in his blood stream, it was his, the witness's, opinion that defendant would have been under the influence.

Then on cross-examination, and without objection by defendant, the witness Davis testified in part: ". . . What I have expressed to the jury is based on my chemical analysis of the blood. I am not an M.D. or a practicing physician . . . In my opinion it takes about 15 to 20 minutes for alcohol to commence being assimilated from the stomach into the blood stream, depending on whether there is anything in the stomach, whether the stomach is empty or whether there is any barrier there to keep the alcohol from being absorbed . . . I would say that if the amount of alcohol in a person's blood were from .05 up to but not including .15 he could or could not be under the influence of alcohol . . ."

While, on the other hand, defendant, as witness in his own behalf, admitted that on 6 October, 1953, he was at stock sales exchange, he denies that during any of the time he was there he was drinking, or eating popcorn, or staggering, or asleep in a car, but asserts that after he had parked his car on S. Elm Street, for use by his sister, he "squatted down in front of the car and drank" the remainder of a pint of whiskey from which he had taken two or three drinks in his yard three or four days before; and that this was between 10 and 15 minutes before the deputy sheriff arrived at the scene. Defendant also testified that on the way to police station the officer said to him, "If you doubt your circumstances that you are in, we will get you a doctor"; that he named Dr. Davis, and that he, defendant, thought Mr. Davis was a doctor, and first learned he was a chemist instead of a doctor in city court when he testified there as a witness.

Then on cross-examination defendant continues in part: ". . . I was sober until I got in the city jail . . . it was 4:57. When I sat there and relaxed, I felt the effects of my whiskey a little then. The blood was drawn about five minutes before then . . . Mr. Davis would not have examined me if I had known that he was not a doctor."

Defendant also offered the testimony of several witnesses tending to corroborate him as to his condition, and not drinking at the stock sale yard.

Verdict: Guilty as charged.

Judgment: Confinement in common jail of Guilford County for a period of four (4) months, to be assigned to work under the supervision of the State Highway and Public Works Commission.

Defendant excepts thereto, and appeals to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Moody for the State.*

*George A. Younce and E. L. Alston, Jr., for defendant, appellant.*

WINBORNE, J.   The record on this appeal contains several pages of unnumbered assignments of error based upon numerous exceptions taken by defendant upon, and in the course of the trial in Superior Court, relating in the main to testimony of the witness Davis, an expert chemist and hematologist, as to the alcoholic content in specimen of defendant's blood, and as to the effect of alcohol upon the human being when taken into the system.   Yet no one of the exceptions is brought forward, or mentioned, in defendant's brief, and no reason or argument has been stated or authority cited therein in support of any particular exception. In such case, under Rule 28 of the Rules of Practice in the Supreme Court, 221 N.C. 544, at pages 562-3, all of the exceptions will be taken as abandoned by appellant.

Here appellant contents himself by stating in his brief, as questions involved, these two:

"1. Is expert testimony as to the results of a blood test taken after a defendant's arrest on a charge of driving under the influence of an intoxicating beverage admissible in the courts of this State?

"2. Did the Solicitor for the State argue improperly to the jury, under the facts of the record in this case, by saying: 'Don't kill my child'?"

This is not sufficient to bring up for consideration the matters to which exceptions shown in the record relate.   But if it were, consideration of the factual situation in the case in respect to the subject matter thereof, in the light of applicable principles of law, the first question merits an affirmative answer, and the second a negative one.

It seems clear that the first question is restricted to the question of the competency of testimony of an expert, who is qualified to make a test for alcoholic content in human blood, as to results obtained upon such a test of the blood of defendant.   The matter of the competency of testimony as to the effect any given quantity of alcohol found in the blood stream would have upon a human being, the defendant, is not included in the phraseology of the question.   Nor does it bring into question the matter of compulsory self-incrimination.   N. C. Const., Art. I, Sec. 11.

In such light it is appropriate to see what the annotators of decided cases have to say on the subject of "Admissibility and weight of evidence based on scientific test for intoxication or presence of alcohol in the system": In Annotation 159 A.L.R. 209, supplementing annotation on same

subject in 127 A.L.R. 1513, it is said: "From the cases generally, it is apparent that, subject to compliance with conditions as to relevancy in point of time, tracing and identification of the specimen, accuracy of the analysis, and qualification of the witness as an expert in the field, there is rather general agreement that where the prosecution in a criminal case seeks to establish the intoxication of the accused, evidence as to the obtaining of a specimen of his body fluid at or near the time in question, evidence as to the alcoholic content of such specimen, as determined by scientific analysis, and expert opinion testimony as to what the presence of the ascertained amount of alcohol in the blood, urine, or other body fluid of an individual indicates with respect to the matter of such individual's intoxication or sobriety, is ordinarily admissible as relevant and competent evidence upon the issue of intoxication, at least where the accused furnished the specimen for the test, or submitted without objection to its taking."

Indeed, in our own reports we have *S. v. Cash,* 219 N.C. 818, 15 S.E. 2d 277, a case in which numerous exceptions were taken to the admission and exclusion of evidence and in which defendant complained in this respect that while he was in jail, specimens of his blood and urine were taken for chemical analysis to determine the presence or absence of alcohol and morphine in his system, and contended that in this way he was compelled to give evidence against himself in violation of the constitutional inhibition against compulsory self-incriminaton. N. C. Const., Art. I, Sec. 11. In connection therewith, this Court, in opinion by *Stacy, C. J.,* wrote as follows: "The record fails to disclose any compulsion on the part of the officers in obtaining specimens of the defendant's blood and urine. The exceptions are therefore feckless. *S. v. Eccles,* 205 N.C. 825, 172 S.E. 415. They are not sustained. It is the rule in this jurisdiction that physical facts discovered by witnesses on information furnished by the defendant may be given in evidence, even where knowledge of such facts is obtained in a privileged manner, *S. v. Garrett,* 71 N.C. 85 (examination by physician), by force, *S. v. Graham,* 74 N.C. 646 (compelling accused to put his shoe in track), by intimidation, duress, etc. Factual information thus brought to light is competent evidence, though the declarations of the accused made at the time, if obtained by improper influence, are to be excluded. *S. v. Gatton,* 60 Ohio App. 192, 20 N.E. 2d 265."

To like effect in principle are *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, opinion by *Ervin, J.,* and *S. v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387, opinion by *Parker, J.*

Therefore, the expert testimony as to the results of test of defendant's blood was admissible on the trial of this case on a charge of driving a

motor vehicle upon the public highways within the State while under the influence of intoxicating beverages. G.S. 20-138.

Moreover, it is not amiss to note that in this State a lay witness is competent to testify whether or not in his opinion a person was under the influence of an intoxicant on a given occasion on which he observed him. See *S. v. Leak,* 156 N.C. 643, 72 S.E. 567; *S. v. Jessup,* 183 N.C. 771, 111 S.E. 523; *S. v. Holland,* 193 N.C. 713, 138 S.E. 8; *S. v. Dills,* 204 N.C. 33, 167 S.E. 459; *S. v. Harris,* 209 N.C. 579, 183 S.E. 740; *S. v. Dawson,* 228 N.C. 85, 44 S.E. 2d 527; *S. v. Warren,* 236 N.C. 358, 72 S.E. 2d 763.

And as to when a person is under the influence of an intoxicant, see definition in *S. v. Carroll,* 226 N.C. 237, 37 S.E. 2d 688.

In the light of these cases, there is in the present case abundant evidence, without any of testimony as to results of the blood test, to support the verdict and judgment pursuant thereto.

Now as to the second question: Defendant contends that the remark of the Solicitor is improper and prejudicial under the principles applied in *S. v. Little,* 228 N.C. 417, 45 S.E. 2d 542; *Cuthrell v. Greene,* 229 N.C. 475, 50 S.E. 2d 525; and *S. v. Smith,* 240 N.C. 631, 83 S.E. 2d 656. In the absence of the factual setting of the remark, it is not made to appear that it was an abuse of fair debate and prejudicial. Nor does the fact that the trial judge failed to instruct the jury in respect to it throw light upon the situation.

For reasons stated, there is in the judgment from which appeal is taken

No error.