STATE v. CAROL WHIDBEE POWELL, JR., Petitioner.

(Filed 17 March, 1965.)

**Automobiles § 71;  Constitutional Law § 33;  Criminal Law § 55—**
> Where the person making the test is shown to be qualified as an expert in the field and the manner in which the test is made meets the requirements of G.S. 20-139.1, the testimony of such person as to the results of a breathalyzer test made on defendant some one-half hour after he was apprehended driving a motor vehicle on a highway is competent.

Appeal by defendant from *Walker, S.J.,* Regular Session "B" Term 1964, November 2, Criminal Session of Mecklenburg.

Defendant was convicted of operating an automobile, when under the influence of intoxicating liquors, on the public highways of this State. Sentence was imposed. He appealed.

*Attorney General Bruton and Staff Attorney Hornthal for the State.*
*Arthur Goodman, Jr., for appellant.*

Per Curiam. An arresting officer testified defendant was operating his automobile in the wrong direction on a one way street in Charlotte. He stopped defendant and placed him under arrest. He expressed the opinion defendant was, when arrested, intoxicated. In response to inquiries by the officer, defendant admitted: "He had had two or three drinks of Scotch and water."

Defendant was arrested about 5:30 a.m. Lt. Polson of the Charlotte Police Force, not one of the arresting officers, saw defendant at 6:05 a.m. Based on his personal observation, and the quantity of alcohol consumed, as related by defendant, the witness expressed the opinion that defendant was then under the influence of intoxicants.

There was plenary evidence to support the verdict. Defendant did not, by motion to nonsuit, challenge the sufficiency of the evidence. He contends incompetent evidence weighed heavily in the jury's deliberation. He assigns as error the court's ruling in permitting Lt. Polson to state the result of a test made by using a breathalyzer. Polson testified that defendant's breath, when tested, showed .22 per cent of alcohol. Our statute, G.S. 20-139.1 (c. 966, S.L. 1963), creates a presumption of intoxication if as much as .10 per cent alcohol is present in the blood.

Before the witness was asked to relate the results of his test, inquiries were made touching his qualifications to make the test. He testified that he attended the Traffic Institute at Northwestern University in 1960, where he was taught how to use the machine invented by Dr. Borkenstein. While there, he did laboratory work on people given known amounts of alcohol to determine the results from its use. In 1962, he spent 26 days at Rutgers summer school studying alcohol and its effects on the human body. In 1963, he observed chemical tests for alcohol at Indiana University, and at the University of North Carolina. He spent some time in the factory where the machines were manufactured. He exhibited the machine to the jury, and explained the principle on which it worked. In 1964, he took a course given by the State Board of Health for the use of breathalyzers. It licensed him to make the tests.

The qualifications of the person making the test, and the manner in which the tests were made, met the requirements of G.S. 20-139.1. The evidence was competent. *State v. Willard,* 241 N.C. 259, 84 S.E. 2d 899; *State v. Moore,* 245 N.C. 158, 95 S.E. 2d 548; *Robinson v. Insurance Co.,* 255 N.C. 669, 122 S.E. 2d 801.

We quote with approval the language of Brett, P.J., in *Toms v. State,* 239 P. 2d 812. He said: "This court is of the opinion, that we should favor the adoption of scientific methods for crime detection, where the demonstrated accuracy and reliability has become established and recognized. Justice is truth in action, and any instrumentality, which aids justice in ascertainment of truth, should be embraced without delay. But, this decision is not ours to make. We have no legislative powers or duties, but the legislature within its legislative powers and constitutional limitations may do so, possibly on the theory that it is within its police power to regulate the highways for the protection of the public. We believe, in the light of the foregoing, chemical tests by experts of body fluids as blood, urine, breath, spinal fluid, saliva, etc., under varying conditions have been approved as having gained that scientific recognition for infallibility as to be admissible in evidence." A lengthy discussion, supported by references to scientific reports demonstrating the reliability of tests of the kind here in question,

may be found in *People v. Kovacik,* 128 N.Y.S. 2d 492. See also: *State v. Johnson,* 199 A. 2d 809; *State v. Miller,* 165 A. 2d 829; *People v. Conterno,* 339 P. 2d 968; *McKay v. State,* 235 S.W. 2d 173; *People v. Bobczyk,* 99 N.E. 2d 567.

Mr. Justice Clark lists, in a note to his opinion in *Breithaupt v. Abram,* 352 U.S. 432, 1 L. Ed. 2d 448, 77 S. Ct. 408, 23 states which had, prior to 1957, adopted statutes giving rise to a presumption of intoxication based on the finding of fixed percentages of alcohol in the bloodstream. He commented: "The fact that so many States make use of the tests negatives the suggestion that there is anything offensive about them."

Affirmed.