STATE OF NORTH CAROLINA v. WILLIAM TYRONE POWELL

No. 38

(Filed 10 November 1971)

Automobiles § 126; Criminal Law § 64— admissibility of breathalyzer test results — requisites of admissibility

Testimony relating to a breathalyzer test administered by a police officer qualified to give the test *is held* properly admitted in evidence in a drunken driving prosecution, and it was not necessary to the admissibility of such testimony that the State introduce a certified copy of the methods approved by the State Board of Health for administering the test. G.S. 20-139.1(b).

ON *certiorari* to review the decision of the Court of Appeals reported in 10 N.C. App. 726, 179 S.E. 2d 785 (1971), which found no error in the trial before *Bowman, S.J.,* at the 11 November 1970 Special Session of WAKE Superior Court.

Defendant was convicted in the District Court of Wake County of operating a motor vehicle on the highway under the influence of intoxicating liquor. He appealed to the Superior Court. From a jury verdict of guilty and judgment thereon, defendant appealed to the Court of Appeals. The Court of Appeals found no error in the trial, and we allowed *certiorari.*

*Attorney General Robert Morgan, Assistant Attorneys General William W. Melvin and T. Buie Costen for the State.*

*William T. McCuiston for defendant appellant.*

State v. Powell

MOORE, Justice.

Defendant presented only one assignment of error to the Court of Appeals, which he brings forward to this Court: Did the trial court err when it ruled that the breathalyzer reading in this case was admissible in evidence? The Court of Appeals held not. We agree with the Court of Appeals.

G.S. 20-139.1 in pertinent part provides:

"Results of chemical analysis admissible in evidence; presumption.—(a) In any criminal action arising out of acts alleged to have been committed by any person while driving a vehicle under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's breath or blood shall be admissible in evidence and shall give rise to the following presumptions:

"(1) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

\*      \*      \*

"(b) Chemical analyses of the person's breath or blood, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the State Board of Health and by an individual possessing a valid permit issued by the State Board of Health for this purpose. The State Board of Health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State Board of Health; provided, that in no case shall the arresting officer or officers administer said test."

The State's evidence tends to show that on 15 August 1970 about 9:50 p.m. Officer Raymond DeVone of the Raleigh Police Department observed defendant driving a Volkswagen on Western Boulevard in the city of Raleigh. The officer stopped defendant and found him to be, in the opinion of the officer, under the influence of intoxicating liquor. Officer DeVone arrested defendant and took him directly to the Wake County magistrate's office. Officer James Pegram of the Raleigh Police

Department was present and, after observing defendant, was also of the opinion that defendant was under the influence of intoxicating liquor. At 10:28 p.m. that same night Officer Pegram administered a breathalyzer test to defendant. This test showed a reading of .18%.

The State's evidence further tends to show that Officer Pegram took the training course at the Wilson Community College for breathalyzer operators as required by the State Board of Health and that he obtained a permit from the Board authorizing him to administer breathalyzer tests. Officer Pegram testified that he had a great deal of experience in administering breathalyzer tests using the same type machine that was used to test the defendant, and that in this case he administered the breathalyzer test in accordance with the rules and regulations established by the State Board of Health and the North Carolina General Statutes on a machine approved by the State Board of Health. Officer Pegram's permit authorizing him to administer breathalyzer tests was admitted into evidence without objection.

Defendant contends that Officer Pegram should not be permitted to testify as to the results of the breathalyzer test until a certified copy of the rules and regulations of the State Board of Health containing the approved methods of administering such a test is admitted into evidence. Defendant asserts that his right of cross-examination was seriously hampered because a copy of such rules and regulations was not introduced in evidence. These rules and regulations of the State Board of Health are public records. A copy can be obtained from the State Board of Health, and copies are filed in the office of the Clerk of the Superior Court in each county, with the local health directors, and with the Secretary of State in Raleigh. Counsel for defendant could have obtained a copy without difficulty, and with this he would have been free to fully cross-examine Officer Pegram concerning his compliance with these rules and regulations. His failure to do so does not make Officer Pegram's testimony incompetent.

G.S. 20-139.1(b) requires two things before a chemical analysis of a person's breath or blood can be considered valid under that section. First, that such analysis shall be performed according to methods approved by the State Board of Health, and second, that such analysis be made by a person possessing a

State v. Powell

valid permit issued by the State Board of Health for this purpose. Officer Pegram had a valid permit issued by the Board to conduct such analysis and testified that he made the analysis in this case according to methods approved by that Board. We hold this sufficient to meet the requirements of G.S. 20-139.1 (b).

In *State v. Powell*, 264 N.C. 73, 140 S.E. 2d 705 (1965), defendant was convicted of operating an automobile while under the influence of intoxicating liquor on the public highways of this State. He appealed and assigned as error the court's ruling in permitting Lieutenant Polson to state the results of the test made by using a breathalyzer. Before the witness was asked to relate the results of his test, inquiries were made touching his qualifications to make the test. He testified as to his various courses in the operation of the machine used in making the test, exhibited the machine to the jury, and explained the principle on which it worked. Among other qualifications he testified that in 1964 he took a course given by the State Board of Health for the use of breathalyzers and that the Board licensed him to make such tests. In a *per curiam* opinion, this Court held:

> "The qualifications of the person making the test, and the manner in which the tests were made, met the requirements of G.S. 20-139.1. The evidence was competent. *State v. Willard*, 241 N.C. 259, 84 S.E. 2d 899; *State v. Moore*, 245 N.C. 158, 95 S.E. 2d 548; *Robinson v. Insurance Co.*, 255 N.C. 669, 122 S.E. 2d 801."

In *State v. Cummings*, 267 N.C. 300, 148 S.E. 2d 97 (1966), the defendant was charged with the offense of driving a motor vehicle upon the public highways while under the influence of intoxicants, and the results of a breathalyzer test administered by Captain Joseph D. Wade were admitted into evidence. Before being permitted to testify, Officer Wade was questioned preliminarily, and his answers tended to show that the tests were made in compliance with G.S. 20-139.1 and the regulations of the State Board of Health as provided for in the statute, and that he was a graduate of the State Board of Health school on breathalyzer work and duly certified as an operator by the Board. The Court, in an opinion by Justice Pless, stated: "The defendant's objections to the results of the Breathalyzer Test are not sustained. . . . "

In *State v. Mobley*, 273 N.C. 471, 160 S.E. 2d 334 (1968), Chief Justice Parker, although holding that the testimony of Officer Krauss concerning the results of a breathalyzer test was incompetent, indirectly approved *State v. Cummings, supra,* and *State v. Powell, supra,* when he stated:

" . . . However, the officer gave no testimony as to his training with the exception that he graduated from the Department of Community College. There is nothing in his testimony to show what he studied in the Community College. The record is bare of any evidence that he attended any school or course of instruction on making breathalyzer tests. There is nothing in his testimony to show that he is qualified to make a test for alcoholic content in human blood and to testify as to results obtained from such a test of defendant's blood. Officer Krauss may be thoroughly qualified as an expert witness to administer the breathalyzer test, but if so, his qualifications do not appear from the meager evidence before us. So far as the present record discloses, the witness Krauss had no such qualifications to make a breathalyzer test as did the witness in *S. v. Cummings*, 267 N.C. 300, 148 S.E. 2d 97, and *S. v. Powell*, 264 N.C. 73, 140 S.E. 2d 705."

Defendant's objections to the admission into evidence of the results of the breathalyzer test are not sustained.

No error.