Stephen Smyk, J.
Appeals (1) by defendant William H. Meikrantz from the judgment of the Justice Court, Town of Union, New York, convicting him of a violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law; and (2) by defendant Joseph W. Kopesky from the judgment of the Justice Court, Town of Vestal, New York, convicting him of a violation of subdivisions 1, 2, and 3 of section 1192 of the Vehicle and Traffic Law.
These appeals present three questions of first impression. First, whether a breath test, to be considered valid in this State, must be performed according to certain Department of Health *893 roles and regulations. Second, are the testing and equilibration of a breathalyzer machine adequate to prove the validity of a breath test result where no competent evidence is presented at trial to establish the alcoholic content of the reference solution used to test and equilibrate the machine. Finally, can a defendant charged only with a violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law be properly convicted, pursuant to section 1196 of that law, of violations of subdivisions 1, 2, and 3 of section 1192. Because these and other cases not yet ready for decision call for a thorough evaluation of the procedure which should be followed in traffic cases involving the use of breath testing instruments, we take occasion to write at some length on all three points. 1
In considering the first issue, we must examine relevant sections of the Vehicle and Traffic Law and look to pertinent provisions of part 59 of the Administrative Rules and Regulations of the New York State Department of Health, in title 10 of the Official Compilation of the Codes, Rules and Regulations of the State of New York (10 NYCRR 59.1 et seq.).
Subdivision 2 of section 1192 of the Vehicle and Traffic Law states: “ No person shall operate a motor vehicle while he has [.12]*.10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this chapter.”
Subdivision 5 of section 1194 (L. 1971, ch. 928) reads: il The department of health shall issue and file rules and regulations approving satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct and supervise chemical analyses of a person’s blood, urine, breath or saliva. If the analyses were made by an individual possessing a permit issued by the department of health, this shall be presumptive evidence that the examination was properly given. The provisions of this subdivision do not prohibit the introduction as evidence of an analysis made by an individual other than a person possessing a permit issued by the department of health.”
Section 59.1(a) (10 NYCRR 59.1 [a]) defines “ techniques or methods ” as used in subdivision 5 of section 1194 (L. 1971, ch. 928) of the Vehicle and Traffic Law, as “ the collection, processing and determination of the alcoholic content of body fluids such as human blood or urine as well as methods for the deter *894 mination of the alcoholic content of breath or alveolar air by approved methods.”
Section 59.5 (10 NYCRR 59.5) provides, in relevant part: 1‘ Breath testing techniques and methods must meet the following criteria: * * * (d) the result of an analysis of a suitable reference sample, such as air equilibrated with a reference solution of alcoholic content of greater than 0.08 percent weight per volume at a known temperature, must agree with the reference sample value within the limits of plus or minus 0.01 percent weight per volume, or such limits as set by the State Commissioner of Health. This analysis shall immediately follow the analysis of the breath of the subject and shall be recorded.”
In the case of defendant Meikrantz, evidence at trial revealed that the result of the analysis of the reference sample immediately following the analysis of defendant’s breath differed from the purported reference solution value by .03 percent weight per volume. Regarding defendant Kopesky, the variance was .02 percent weight per volume. Hence, in neither case were the standards stipulated in 10 NYCRR 59.5(d) met.
The defendants argue that the Legislature, in enacting subdivision 5 of section 1194 (L. 1971, ch. 928) of the Vehicle and Traffic Law, conferred upon the New York State Department of Health the authority to promulgate approved “ techniques or methods ” for determining the alcoholic content of breath. They contend that 10 NYCRR 59.5 was the result of this delegation of authority. They further maintain that pursuant to subdivision 5 of section 1194 (L. 1971, ch. 928), a chemical analysis of a person’s breath, to be considered valid, must be performed according to those “ techniques or methods.” In other words, they contend that the Legislature intended subdivision 5 of section 1194 (L. 1971, ch. 928) to condition the admission in evidence of breath test results upon compliance with 10 NYCRR 59.5(d). We disagree.
At the outset, there can be no serious dispute that the language of subdivision 5 of section 1194 (L. 1971, ch. 928) is somewhat ambiguous and inarticulate. However, where there is doubt as to the meaning intended to be expressed by a statute, resort may be had to various rules for determining such meaning.
In making such a determination, we must construe the language of the statute as we find it, or as it is written (People v. Friedman, 302 N. Y. 75; People v. Kupprat, 6 N Y 2d 88), not as we believe it should have been written (People v. Olah, 300 N. Y. 96). Under the doctrine of separation of powers, it is fundamental that courts may not legislate, nor may they change *895 legislation. Freedom to construe a statute is not freedom to amend it (Sexauer & Lemke v. Burke & Sons Co., 228 N. Y. 341).
In determining legislative intent, we may interpret the law in the light of its historical background or the circumstances leading to its enactment (Matter of Stupack, 274 N. Y. 198). We may consider the objects and purposes which the Legislature sought to accomplish by such legislation (Matter of Hogan v. Culkin, 18 N Y 2d 330), and the policy which induced its enactment (MV AIC v. Eisenberg, 18 N Y 2d 1). Also, as an aid to statutory construction, we may resort to decisions of courts of other States construing language of similar import (Williams v. Tompkins, Inc., 208 App. Div. 574).
Aside from the question of whether subdivision 5 of section 1194 (L. 1971, ch. 928) properly delegates authority to the Department of Health to establish rules and regulations approving satisfactory techniques or methods governing the conduct of chemical analyses, the People argue that, had the Legislature intended to make the validity of breath test results depend upon compliance with such techniques or methods, it could easily have found apt words to express it (Hennessy v. Walker, 279 N. Y. 94). We note in this regard that the North Carolina Legislature apparently had no difficulty expressing itself in a similar statute which reads: “ Chemical analyses of the person’s breath or blood, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the State Board of Health and by an individual possessing a valid permit issued by the State Board of Health for this purpose. The State Board of Health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the State Board of Health; provided, that in no case shall the arresting officer or officers administer said test.” (N. C. Gen. Stat., § 20-139.1, subd. [b], cited in People v. Powell, 279 N. C. 608, 610-611, 184 S. E. 2d 243, 244; see, also, W. Va. Code, ch. 17C, art. 5A, §§ 1-5 cited in People v. Hood, 184 S. E. 2d 334, 336-337.) Certainly, no language is present in said subdivision 5 of section 1194 which even remotely suggests such import. Furthermore, said subdivision 5 of section 1194, unlike a similar California statute, fails to even expressly require that chemical tests be performed according to rules and regulations adopted by the Department of Health (see Cal. Codes, Health and Safety *896 Code, § 436.52 cited in People v. Foulger, 26 Cal. App. 3d Supp. 1, 3).
On its face, said subdivision 5 of section 1194 provides for the issuance of permits by the Department of Health to persons deemed competent to conduct chemical tests for alcohol, and further provides that if such an analysis is made by a person possessing such a permit, it shall be presumptive evidence that such a test was properly given. The statute also provides that the Department of Health shall issue and file rules and regulations approving satisfactory methods to ascertain the competence of individuals to conduct and supervise chemical analyses for alcohol. It specifically allows the introduction of test results made by persons not holding permits, but in such eases the presumption of propriety does not apply.
Prior to the passage of the section, the qualification of persons who conduct chemical tests for intoxication in charges of violations of section 1192 of the Vehicle and Traffic Law often resulted in long drawn-out testimony and cross-examination, sometimes distracting from the main issue of the trial, the alcoholic content of the defendant’s breath. In some areas, the court’s insistence upon expert testimony of what is described as a routine procedure (People v. Donaldson, 36 A D 2d 37) resulted in the clogging of court calendars and a reluctance to proceed to trial in these cases. Also, some operators of chemical test devices did not have sufficient training to be able to provide sound testimony as to the validity of the procedures which they followed. Hence, we are persuaded that subdivision 5 of section 1194 was enacted to provide that the Department of Health would establish qualifications for the certification of operators and analysts to assure that tests would be properly conducted and analyzed and that such persons would be competent to testify as to the procedures followed. The issuance of a permit by the Department of Health presumptively qualifies such person and his testimony. We feel the intended result, therefore, was the more expeditious and proper handling of driving-while-intoxicated cases. However, the defense is still able to introduce evidence in a situation in which the test may not, in fact, have been properly given.
Accordingly, absent a provision of the statute excluding the evidence in criminal prosecutions, or absent an express provision at least requiring compliance with the Department of Health regulations, and in view of the circumstances and policy considerations which prompted the statute’s passage, we do not believe the Legislature intended said subdivision 5 of section *897 1194 to make the validity of breath test results depend upon, or to condition the admission in evidence of test results upon, compliance with 10 NYCRR 59:5 (d). We further believe that the validity of such tests is to be determined in accordance with medical and scientific standards generally and that intrinsic evidence, rather than standards fixed by departmental rules, properly measures reliability and accuracy of test results (People v. Monahan, 25 N Y 2d 378).
However, the result we. reach does not affect defense counsel’s right to make any proper use of the noncompliance of a given breath test with .the Department of Health rules and regulations in an attempt to persuade the trier of fact that the test result was invalid. We note in this regard that it may even be proper for defense counsel to read pertinent provisions of the regulations in evidence (Executive Law, § 106).
We turn now to the question of whether it is a necessary foundation, for the admission in evidence of breath test results, to prove by competent evidence the alcoholic content of the reference solution used to test and equilibrate breath testing instruments. By “testing” and “equilibrating” we mean both the weekly testing of breathalyzers by local police forces and the analysis of a reference sample which immediately follows the analysis of a subject’s breath pursuant to current police procedure.
In testing and equilibrating, analyses are conducted using a suitable reference sample, such as air equilibrated with an alcoholic reference solution (usually 0.15% weight per volume at a known temperature). The reference solution is delivered monthly in a sealed bottle to local police stations directly from the manufacturer. Upon its arrival, the reference, solution is poured into an electric simulator assembly resembling a canning jar, and the assembly is plugged in to warm the solution to the proper temperature (usually 34°0). Accompanying the reference solution is a manufacturer’s laboratory certificate of analysis showing that the lot from which the bottled solution was taken was random sampled with stated results, and that the alcohol and water used in the solution were found to be free of any interfering substances. A label showing the alcoholic content or value of the new reference solution as found by the laboratory is also enclosed and is affixed to the front of the simulator assembly at the station. A reference sample, vapor from the predetermined alcoholic solution simulating breath, is then passed through the breathalyzer machine *898 in order to obtain a reading on the gauge and verify the reference solution value.
A weekly test is actually comprised of several successive analyses using reference samples. Between each test the breathalyzer machine is flushed or purged with clear air. The test conducted immediately following the subject’s test is a single analysis .and is preceded by a similar purge of the machine. The result of each analysis should equal or closely approximate the purported value of the reference solution and the result of the analyses comprising a weekly test should be identical. In this way, the breathalyzer operator can determine if a breathalyzer machine is functioning properly and the results it yields are accurate and reliable.
Defendants argue, and the People concede, that at neither of these trials was competent evidence adduced to establish the alcoholic content of the reference solution used to test and equilibrate their breathalyzers. The defendants contend that this lack of proof renders the breath test invalid and that, consequently, the admission of the test results in evidence was reversible error. Hence, they maintain that unless it is clearly demonstrated that the reference solution is of the value it purports to be it cannot be scientifically determined if a breath testing instrument is functioning properly or the test results it renders are accurate and reliable.
The .point (raised is well taken, but we do not believe it necessary for the People to prove by competent evidence the value of the reference solution in all breathalyzer cases.
At the outset we. note that the admissibility in evidence of any breath test result depends upon presenting an adequate foundation. It further appears that the elements of a necessary foundation are:
(1) that there was compliance with any statutory requirement (see Vehicle and Traffic Law, §§ 1193-a and 1194);
(2) that a specified type ¡of breath testing device was used to analyze a breath sample and that such device is scientifically reliable for measuring the percent of alcohol in the blood through a chemical analysis of a subject’s breath, unless such reliability has been judicially recognized ,(e.g., People v. Donaldson, 36 A D 2d 37, supra [the breathalyzer]) ;
(3) that the testing device was in proper working order;
(4) that ,the person giving and interpreting the .test was properly qualified (e.g., People v. Donaldson, supra) ;
(5) that the chemicals used in the test (i.e., the ampoules used in a breathalyzer) were of the proper kind and mixed in the *899 proper proportions (People v. Donaldson, supra). In .this regard we note that random sampling of the particular lot the ampoules were from is probably sufficient to show such propriety (see People v. Coffman, 502 P. 2d 605 [Ore.]; State v. Baker, 56 Wn. 2d 846);
(6) that the test was properly conducted.
All elements of a proper foundation must be met and each is aimed to insure that the results of a given subject’s breath test are accurate and reliable. The present allegation of error is directed toward the third element alone, namely, and more particularly, whether the breathalyzer used in the defendants’ tests was proven to be in proper working order. We feel this element has special significance in regard to the validity of test results.
A determination regarding the proper functioning of a breathalyzer must be made on a case-by-case basis and must rely on the intrinsic evidence presented at trial. Each case must be looked at anew and each must stand or fall on its own facts and no judicial formula can be conjured up to supplant <what appears on the face of the record of an individual ease. With this in mind, we turn to the records of the instant cases.
At the trial of defendant Meikrantz, the prosecution offered and the court admitted into evidence, presumably under CPLR 4518 (subd. [c]), two photocopies of calibration records (certificates of calibration) made .by the New York State Police laboratory in Albany. The term il calibration ” refers to an adjustment of the breathalyzer machine as distinguished from a mere test of the machine. If a weekly test at the station indicates a machine malfunction, it is sent to the laboratory to be calibrated. However, one of the certificates therein was dated two and one-quarter years before the defendant’s test, while the other was made three months thereafter. Consequently, the defendant’s specific objections on the grounds of remoteness on the one hand and irrelevancy on the other should have been sustained and the records suppressed.
Two weekly test records (alcohol breath simulator records) were then introduced, as a business records exception to the hearsay rule. These records apparently showed the results of two weekly tests conducted three days prior to the defendants’ test and four days subsequent thereto. However, the results of these weekly tests are not set forth on the record.
Finally, the analysis immediately following the defendant’s test was testified to. The witness police officer stated that the value of the alcoholic reference solution was 0.15% while the *900 result obtained was 0.12%. The witness never adequately explained the reason for the deviation of 0.03%.
On the other hand, in the ease of defendant Kopesky, two separate breathalyzer tests were conducted and the results of both tests were identical, 0.19%.
Testimony was admitted that the reference solution used to test and equilibrate the breathalyzer in question was prepared by a private hospital laboratory and that its purported value was 0.15%. The probability of deterioration of the alcoholic reference solution over a period of time was amply covered in the testimony, as was the consequence that the weekly test results were slightly lower than the purported value of such solution. In this regard, an alcohol breath simulator record was admitted in evidence showing the results of weekly tests conducted at the police station for the six weeks immediately prior to the defendant’s tests and for the five weeks immediately following them. The results of the successive analyses comprising each weekly test were demonstrated to be nearly identical. The same exhibit also showed that an analysis of the reference sample was conducted immediately following each of the defendant’s tests, with the .same results.
Finally, testimony revealed that a certificate of calibration made by the manufacturer of the breathalyzer was delivered with the machine in question when it was purchased nine months prior to the defendant’s tests.
We note that in Kopesky a recorded history of the results of weekly tests conducted within a reasonable time before and after the defendant’s test was compiled and introduced, while in Meikrcmtz evidence of only, two such weekly tests was introduced, one of which was conducted .after the fact.
In both cases, the results of the analyses which follow the subjects’ breath test were admitted and in each instance there was a deviation from the purported value of the reference solution. Only in Kopesky, however, were the deviations adequately explained in terms of the probable deterioration of the alcoholic solution.
Furthermore, in Kopesky the results of all tests and equilibrations, both before and after the defendant’s tests, were demonstrated to have closely approximated the purported reference solution value (with any deviation accounted for) and the results of the analyses comprising each weekly test were shown to be nearly identical. No such showing was made on the record in Meikrcmts.
*901 ■Finally, at defendant Kopesky’s trial testimony was admitted concerning a manufacturer’s certificate of calibration dated nine months before defendant’s test while the calibration certificates introduced in Meikrcmtz were remote.
While our higher courts have not spelled out the exact limits to which an accused drunken driver may go to plumb the accuracy of the testing devices and solutions, we are not prepared to east the burden on the People in all eases of offering proof of the accuracy of the reference solution’s value, beyond the comparative analyses made in Kopesky. We are persuaded that in Kopesky there ¡was “ reasonable proof ” of the reliability of the reference solution and the accuracy of the breathalyzer itself. Such proof was lacking in the case of defendant Meikrcmtz.
Accordingly, at this point the conviction of defendant Meikrantz is reversed, since the proper functioning of the breathalyzer was not sufficiently shown.
We feel that the conclusion we have reached regarding defendant Kopesky’s case is well-grounded in reason. We recognize that the breathalyzer is scientifically reliable for determining the percentage of alcohol in the blood if tests are conducted in accordance with proper procedures (People v. Donaldson, 36 A D 2d 37, supra). Furthermore, in Kopesky we believe it to be more than coincidental that the results of the several analyses comprising each weekly test were nearly identical and that the results of all tests and equilibrations closely approximated the purported value of the reference solution with deviations explained on the record. To us it is inconceivable how the breathalyzer and the reference solution could both be inaccurate to the same degree (cf. People v. Stephens, 52 Misc 2d 1070).
We further believe that in view of the possible presumption of propriety applicable in breathalyzer cases under the aforesaid subdivision 5 of section 1194 and in light of previous Court of Appeals opinions regarding untested speedometers and radar devices (People v. Magri, 3 N Y 2d 562 and People v. Dusing, 5 N Y 2d 126), that even a reading from an untested breathalyzer machine is admissible in a prosecution for driving while ability impaired or driving while intoxicated in violation of subdivision 1 of section 1192 or subdivision ,3 of section 1192 of the Vehicle and Traffic Law. However, such evidence cannot alone be sufficient for conviction under these sections, and the deficiency in proof can be supplied by the opinion testimony of qualified observers of the defendant’s conduct, speech and *902 demeanor to establish the fact of the defendant’s impaired ability or intoxication (see People v. Morris, 63 Misc 2d 124, 127).
The third and final issue for consideration, is raised on behalf of Kopesky alone. He contends that his conviction must be reversed because of an erroneous jury charge at his trial. We agree.
The defendant was arrested and charged with driving while intoxicated in violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law. At his trial on that charge, the court instructed the jury that the defendant could be found guilty of ■one or more of the following: driving while ability impaired in violation of subdivision 1 of section 1192, driving with .12 of one percentum or more by weight of alcohol in his blood in violation of subdivision 2 of section 1192 and driving while intoxicated in violation of subdivision 3 of section .1192. The defendant was subsequently found guilty of violating all three of the subdivisions.
Section 1196 reads: ‘ ‘ A driver may be convicted of a violation of subdivisions one, two or three of section eleven hundred ninety-two, notwithstanding that the charge laid before the court alleged a violation of subdivision two or three of section eleven hundred ninety-two, and regardless of whether or not such conviction is based on a plea of guilty.” (Emphasis ours.)
Subdivisions .2 and 3 of section 1192 were intended to be separate crimes, neither mutually inclusive nor exclusive (People v. McDonough, 39 A D 2d 188; People v. Rudd, 41 A D 2d 875). Moreover, they may be joined as multiple counts in one indictment since they are based upon the same criminal transaction (CPL 200.20, subd. 2, par. [a]; People v. Rudd, supra). As the court said in Rudd, supra, p. 876: “ After the trial of a multiple count indictment containing concurrent counts only (those [on] which only concurrent sentences could be imposed) and if those counts are noninclusory (when the offense charged is not one ■greater than any of those charged in the others and when the latter are not iall lesser offenses included within the greater), the court may in its discretion submit one or more or all thereof to the jury (CPL 300.40, subd. 3, par. [a]).”
Our examination of the Rudd decision persuades us that, for a defendant to be convicted of both driving under the influence of alcohol in violation of subdivision 2 of section 1192 and driving while intoxicated in violation of subdivision 3 of section 1192, it is necessary for the police to serve two uniform traffic tickets and file two simplified informations or otherwise follow *903 a procedure having the effect of a multicount indictment. Where, however, only une uniform traffic ticket is served and one simplified information is filed, for example, charging a violation of subdivision 3 of section 1192, section 1196 provides that a defendant may be found guilty of but one of the enumerated subdivisions of section 1192 (see People v. Kaeppel, 74 Misc 2d 220, 222).
Nevertheless, at least one lower court in New York has indicated that even this restricted interpretation of section 1196 violates the United States iConstitution, Sixth Amendment and section 6 of article I of1 the New York State Constitution (People v. Fielder, 75 Misc 2d 446). For this reason we believe the safer course for the People to follow in driving-while-intoxicated cases is either:
(1) Immediately file an information charging subdivision 3 of section 1192. When the necessary additional factual allegations become available to support subdivision 2, a second information may be filed charging subdivision 2 of section 1192, and thereafter an application can be made to consolidate both informations pursuant to CPL 200.20 (subd. 4) and CPL 100.45. Under such circumstances the court should have no difficulty in exercising its discretion in granting said application as provided in CPL 200.20 (subd. 5); or
(2) immediately filing a misdemeanor complaint charging violation of both subdivisions 2 and 3 of section 1192 (CPL 100.05, subd. 4) and then subsequently filing a supporting deposition supplying the necessary factual allegations to support the charge of subdivision 2 of section 1192 (CPL 170.65, subds. 1 and 2).
Incidentally, it may be stated that subdivision 1 of1 section 1192 need not be included in the information, in that the same would be a lesser included charge (CPL 360.50).
In the case of defendant Kopesky, we find that, because only one simplified information was filed — that charging a violation of subdivision 3 of section 1192 — the charge below was erroneous and improper. Further, we cannot say that such error was merely technical and did not affect the substantial rights of the defendant (see CPL 470.05, subd. 1). Accordingly, defendant Kopesky’,s conviction is set aside.
In conclusion, for the above reasons, the convictions of both defendants are reversed.

 Chapters 450 and 451 of the Laws of 1972, elf. Jan. 1, 1973.
Note: Material bracketed [ ] was in effect until Dee. 31, 1972.