GEER, Judge.
A jury convicted defendant Robert Jerome Tesar of driving while impaired in violation of N.C. Gen. Stat. § 20-138.1 (2003). On appeal, defendant contends primarily that the trial court erred in admitting the results of an Intoxilyzer test because of inadequacies in testimony laying the foundation for admission of the test results. Based on our review of the record, we hold that the trial court did not err. We also find no merit to any of defendant's other assignments of error.
Facts
The State's evidence tended to show the following. At approximately 11:00 p.m. on 29 June 2002, defendant failed to stop at a DWI checkpoint, instead driving through at a rate of 15 to 20 miles per hour. When a deputy sheriff yelled at defendant to stop, defendant veered his vehicle into a ditch on the right shoulder of the road and stopped approximately 25 yards later. The deputy approached defendant's vehicle and, as he spoke to defendant, noticed an odor of alcohol.
Defendant is a quadruple amputee whose legs were amputated at mid-shin, whose left arm was amputated six inches below the elbow, and whose right hand was amputated at the wrist. Defendant's prosthetics on his arms consist of "hooks." Also in the car with defendant were a woman in the passenger seat and a young child in the back seat.
The deputy asked defendant if he had been drinking. Defendant claimed that he had only drunk half a beer. According to the deputy, defendant's speech was slurred and his eyes were red and glassy. The deputy had defendant perform field sobriety tests. Based on defendant's performance on the tests and the deputy's observations, the deputy formed the opinion that defendant "had consumed a sufficient amount of some impairing substance [so] as to appreciably impair his physical and mental faculties." The deputy, Michael Aytes, arrested defendant and transported him to the jail where he administered a breath-alcohol test using an Intoxilyzer, Model 5000. That test indicated defendant had a breath alcohol concentration of 0.21.
Defendant testified on his own behalf that he and his wife had been at a party at a friend's home. He testified that when he tried to open a beer, it slipped out of his hook prosthetics and spilled on his clothes. Although he did drink "a portion" of the beer, it "bloated in [his] throat," so he asked another person at the party to throw out the remaining beer. Defendant claimed that he did not drink any other alcoholic beverage that evening. He explained that he thought that the deputy had waved him through the DWI checkpoint and that he had difficulty with the field sobriety tests because of his amputated legs. Defendant also called as a witness the party's host who testified that she did not see defendant drink any alcoholic beverage other than the one beer while he was at her home.
I
Defendant challenges the trial court's admission of the Intoxilyzer test results, arguing that the State failed to lay a proper evidentiary foundation. N.C. Gen. Stat. § 20-139.1(b) (2003) provides:
A chemical analysis, to be valid, shall beperformed in accordance with the provisions of this section. The chemical analysis shall be performed according to methods approved by the Commission for Health Services by an individual possessing a current permit issued by the Department of Health and Human Services for that type of chemical analysis.
An arresting officer may perform a chemical analysis of the breath only when (1) the officer possesses a current permit issued by the Department of Health and Human Services ("DHHS") for that type of chemical analysis; and (2) the officer performs the chemical analysis by using an automated instrument that prints the results of the analysis. N.C. Gen. Stat. § 20-139.1(b1) (2003).
Defendant first claims that Deputy Aytes did not testify that his permit was issued by the DHHS. Our review of the record shows that when Deputy Aytes was asked who had issued his certificate for chemical analysis, he stated: "[T]he North Carolina Commission for Health Services[,]" referring to a commission within the DHHS. In addition, a copy of Deputy Aytes' permit was admitted into evidence.
Defendant argues, however, that the trial court should have excluded the copy of Deputy Aytes' permit under N.C.R. Evid. 1004 since the original was available but not produced at trial. Rule 1003 provides, however, that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstancesit would be unfair to admit the duplicate in lieu of the original." Since defendant did not raise any question as to the genuineness of the permit and has not pointed to any circumstances requiring admission of the original, we overrule this assignment of error.
Defendant next claims the trial court erred in allowing Deputy Aytes to testify that he was licensed to use the Intoxilyzer when he did not specify, at that time, that he was licensed as to the 5000 series model used. The statute, however, requires only a permit "for that type of chemical analysis." N.C. Gen. Stat. § 20-139.1(b). In addition, in other testimony, Deputy Aytes specifically testified that he was qualified to administer tests using the Intoxilyzer 5000. Defendant has cited no authority suggesting that this testimony is inadequate.
Defendant next argues that the trial court should have excluded the Intoxilyzer test results because Deputy Aytes did not establish that he performed the test in accordance with methods allowed under N.C. Gen. Stat. § 20-139.1(b). To the contrary, our review of the transcript reveals that Deputy Aytes testified generally that he followed the required procedures and then specifically described those procedures. This testimony complied with N.C. Gen. Stat. § 20-139.1(b). State v. Powell, 279 N.C. 608, 610-11, 184 S.E.2d 243, 245 (1971) (holding that officer's testimony that he held valid permit and followed approved methodswas sufficient to satisfy N.C. Gen. Stat. § 20-139.1(b)).
Because the State offered evidence that Deputy Aytes complied with the required procedures and that the DHHS had issued him a permit to perform the test, the Intoxilyzer results were properly admitted.
II
Defendant next contends that the trial court erred in overruling his objection to the State's question, while establishing Deputy Aytes' training, whether he had participated in controlled studies as to the effects of drinking. Deputy Aytes answered:
My main experience with that is, we learn in school it takes about one hour to get rid of one alcoholic beverage or glass of wine. One alcohol drink would be about a .02. If you was able to take a whole [beer] and dump it inside your body in one second, if that makes sense. Take one beer and dump it in my body, you would blow approximately .02. We were allowed to drink for forty-five minutes and you could see how many alcoholic drinks you had, and then you could see what you blew. You kind of get a hands on experience with it.
Defendant argues that by allowing this testimony, the trial court permitted Deputy Aytes "to testify to scientific evidence without any evidence to indicate that he was qualified to do so."
Even assuming arguendo that this testimony should have been excluded, we hold that its omission was harmless. The State alsopresented the testimony of Paul Glover, a research scientist for the DHHS and a trained specialist regarding forensic alcohol tests. Glover, who was admitted as an expert witness, testified extensively regarding rates of elimination in a manner that was not inconsistent with Deputy Aytes' testimony. "Where improperly admitted evidence merely corroborates testimony from other witnesses, we have found the error harmless." State v. Fullwood, 323 N.C. 371, 384, 373 S.E.2d 518, 527 (1988), sentence vacated on other grounds, 494 U.S. 1022, 108 L. Ed. 2d 602, 110 S. Ct. 1464 (1990). We perceive no reasonable possibility that the jury would have reached a different result absent Deputy Aytes' testimony.
In a related assignment of error, defendant points to the prosecutor's question whether Deputy Aytes asked defendant to perform any field sobriety test. The deputy responded that he had performed a horizontal gaze and nystagmus test on his eyes. At this point, the trial court sustained defendant's objection to any testimony regarding that test. See State v. Helms, 348 N.C. 578, 582, 504 S.E.2d 293, 295 (1998) ("Until there is sufficient scientifically reliable evidence as to the correlation between intoxication and nystagmus, it is improper to permit a lay person to testify as to the meaning of HGN test results."). Defendant contends that error still occurred, despite the court's sustaining his objection, because the deputy's testimony suggested "to thejury that some scientific test was given without proper foundation and it could have affected the verdict of the jury." Since defendant does not point to anything else that the trial court should have done apart from sustaining the objection, we overrule this assignment of error.
III
Defendant contends the trial court erred in denying his motion to dismiss at the close of the State's evidence and at the close of all the evidence. In considering a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the crime charged. State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. Id. at 597, 573 S.E.2d at 869. In reviewing the trial court's ruling, this Court views the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Id. at 596, 573 S.E.2d at 869. We must disregard defendant's evidence unless it is favorable to the State or does not conflict with the State's evidence. Id.
Under N.C. Gen. Stat. § 20-138.1, a person commits the offense of impaired driving if he drives any vehicle upon any highway, street, or public vehicular area within this State (1) while under the influence of an impairing substance; or (2) after havingconsumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. Once it is determined that the chemical analysis of a defendant's breath comported with N.C. Gen. Stat. §20-139.1(b), then a reading of 0.08 constitutes reliable evidence and is sufficient to satisfy the State's burden of proof as to this element of the offense. State v. Shuping, 312 N.C. 421, 431, 323 S.E.2d 350, 356 (1984).
The State presented evidence that defendant's blood alcohol concentration level was 0.21 more than one hour after Deputy Aytes stopped defendant's vehicle. In addition, Deputy Aytes testified that after he saw defendant fail to stop at a DWI checkpoint and veer his vehicle into a ditch, defendant had slurred speech, glassy eyes, and an odor of alcohol. Although defendant presented evidence that he contends justifies a finding that he was not driving while impaired, the "[e]vidence in the record supporting a contrary inference is not determinative on a motion to dismiss." Scott, 356 N.C. at 598, 573 S.E.2d at 870. Under the applicable standard of review, we hold the State presented ample evidence to defeat the motion to dismiss. State v. Catoe, 78 N.C. App. 167, 170, 336 S.E.2d 691, 693 (1985) (arresting officer's observations of a moderate odor of alcohol, slurred speech, and glassy eyes together with a breath alcohol concentration of .09 was sufficient evidence to go to the jury), disc. review denied, 316 N.C. 380, 344S.E.2d 1 (1986).
No error.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).