STATE v. YOUNG COLEMAN.

(Filed 31 May, 1939.)

**1. Criminal Law § 81c—**

> The ruling of the court sustaining objections to questions propounded by defendant on cross-examination of the State's witnesses cannot be held prejudicial when it appears that in most instances the questions were substantially answered and that in others the questions were but reduplications of inquiries in a different form, calculated to bring out matter which the witnesses had already negatived.

**2. Criminal Law § 41b—**

> The scope of the cross-examination must rest largely in the discretion of the trial court, even though the purpose of the cross-examination is to discredit the witness.

APPEAL by defendant from *Clement, J.,* at April Term, 1939, of FORSYTH. No error.

Charge: Robbery.

Verdict: Guilty.

Sentence: 12 years on the public roads.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State, appellee.*

*Winfield Blackwell, John C. Wallace, and Gilbert Shermer for defendant, appellant.*

SEAWELL, J. The substantial evidence in the case is as follows:

On the night of 6 January, 1939, Woodrow K. Parrish, a taxi driver, was hailed by three colored men and, at their direction, carried them to a deserted spot on the outskirts of the city of Winston-Salem. There, at the point of a pistol, they took $7.00 from his person. They carried him to a still more deserted locality, put him out, and drove away.

Upon reaching the nearest telephone Parrish immediately got in contact with the police force and informed them of the occurrence. Sometime later his cab was found parked in the city.

From time to time thereafter, covering a period of about two months, Parrish was called upon to see suspects whom the police had picked up, on the possibility that he might identify one or more of them as his assailants.

When he was finally brought to view this defendant, he immediately identified him as one of the men who had robbed him.

There is evidence to the effect that other employees of the Blue Bird Taxi Company had been interested in the apprehension of the persons who had attacked Parrish; and it is further in evidence that some of them had shot this defendant in the leg the night before his identification by Parrish, and that on the occasion of such identification he was limping. On the trial of the case the defense sought to impeach the witness Parrish, who had identified the defendant, by showing a personal and business connection between him and the other persons, whom they allege had an animosity against the witness, by showing that he had a knowledge of the arrest and wounding of defendant by such persons on the night before, and by developing the theory that this witness was biased in his testimony through a desire to aid such persons.

Examining the exceptions pointed out by defendant's counsel in their brief, the record shows the following questions propounded to the witness Parrish on cross-examination: Question: "You had never seen him from January 6th until after Mr. Gray Thompson and J. T. Thompson, Jr., who works for the Blue Bird, and Mr. White, who also works for the Blue Bird, had been to his home and shot him and had him down there?" Although the record is marked: "Objection sustained and the defendant excepted, Exception No. 1," it shows that, notwithstanding such ruling, the answer was actually admitted as follows: "I don't know whether he was shot at the time I was sent for in the police court." This was fol-

lowed by the question: "Didn't you find that out?" This was excluded. During the further progress of the cross-examination this witness, in response to a question, answered that J. T. Thompson, Jr., was not down there when the identification was made, and that the witness was down there when the defendant had his trial. Question: "What was J. T. Thompson, Jr., indicted for?" To this, objection was sustained and the defendant excepted. Question: "Was he tried there that morning?" The record states: "Objection overruled and defendant excepted." Probably the objection was sustained.

On further cross-examination the witness was asked: "Didn't he come out limping like you saw him walk into the courtroom?" (The reference is to the defendant.) The record shows that objection was sustained and defendant excepted; but it also shows that despite this fact the witness answered: "I saw him come in limping a minute ago. I saw him limping down in police court. I didn't know he had been shot the night before." Question: "You hadn't discussed it down there with J. T. Thompson, Jr.?" Objection was sustained and defendant excepted.

From the foregoing it will appear that the questions propounded by defense counsel were in most instances substantially answered and in others were but reduplications of inquiry in a different form, calculated to bring out matter which the witness had already negatived. *S. v. Edmonds,* 185 N. C., 721, 117 S. E., 23; *S. v. Jestes,* 185 N. C., 735, 117 S. E., 385. That the purpose of counsel was to establish interest and bias on the part of the witness does not perforce abrogate the rule that the scope of the cross-examination must rest largely in the discretion of the trial court. *S. v. Beal,* 199 N. C., 278 (298), 154 S. E., 604; Wigmore on Evidence (2d ed.), sec. 944, *et seq.,* 28 R. C. L., 445. There does not appear to be any abuse of discretion on the part of the trial judge. *S. v. Buck,* 191 N. C., 528, 132 S. E., 151; *S. v. Cobb,* 164 N. C., 418, 79 S. E., 419.

After all, in the absence of more specific evidence, which the defendant might have introduced if available, the theory upon which the defense attempts to predicate bias and prejudice on the part of the witness Parrish seems to us too remote to serve him in this case.

Other exceptions are without merit.

In the trial there is

No error.