STATE OF NORTH CAROLINA v. CARL MILLER, ARTIS PARNELL McCLAIN, LARRY CAMPANELLA CLARK

No. 79

(Filed 17 December 1975)

1. Criminal Law § 91— motion to continue — time for attorney to prepare — denial of motion proper

The trial court did not abuse its discretion nor were defendant Clark's constitutional rights violated by the trial court's refusal to continue the case where defense counsel Bender represented all three defendants for over two months, both he and defense counsel Talman represented them throughout the trial, Talman was employed by defendant Clark on 21 October and conferred with him for two hours on 25 October, Talman intended to interview witnesses in Statesville on 26 October but was unable to do so by reason of the disappearance of his daughter, Bender knew the case would be called for trial on 28 October, Bender had requested permission to withdraw as counsel for defendant Clark but permission was denied, Bender made no contention that he was not ready for trial in Clark's case, the record did not show who defendant Clark's Statesville witnesses were or what their testimony would be, and the oral motion for continuance was not supported by affidavit or other proof.

2. Criminal Law § 27— plea in abatement — county in which crime occurred — indictment and proof not at variance

The trial court properly overruled defendants' plea in abatement which alleged that the offense in question occurred in Iredell County rather than in Catawba County as charged in the bills of indictment, since evidence presented by the State tended to show that a witness who observed defendants and their victim at the crime scene testified that he observed them on the west side of the Catawba River and in Catawba County.

3. Constitutional Law § 32— photographic identification — no right to presence of counsel

An accused has no constitutional right to the presence of counsel when eyewitnesses are viewing photographs for purposes of identification, and this is true regardless of whether the suspect is at liberty or in custody at the time.

4. Criminal Law § 66— in-court identification of defendants — pretrial photographic identification proper

In-court identification of defendants by three witnesses was not tainted by pretrial photographic identification procedures where the photographic identification took place only a few hours after the crime, each witness viewing the photographs was advised by the investigating officer that he was not to conclude or guess that the photographs contained the picture of the person who committed the crime, nor was he obligated to identify anyone, two of the witnesses were in the presence of defendants for the better part of an hour, neither of them ever identified anyone else, and all three witnesses were positive in their in-court identification.

State v. Miller

5. **Criminal Law § 42— derringer used in crime — admissibility**

The trial court in a rape case did not err in admitting into evidence a .38 caliber derringer pistol where the evidence tended to show that the pistol was held on a male hitchhiker by one of the defendants while the others were raping the hitchhiker's female companion.

6. **Criminal Law § 169— objections to questions — failure to show what answers would have been — no prejudice shown**

Where the record fails to show what the answer would have been had the witness been permitted to answer, the exclusion of such testimony cannot be held prejudicial, and this rule applies not only to direct examination but to questions on cross-examination as well.

7. **Criminal Law § 80— copy of DMV record — admissibility — reading by district attorney — no error**

The trial court did not err in allowing into evidence a properly certified copy of a record of the Department of Motor Vehicles, nor did it err in allowing the same to be read into evidence by the district attorney.

8. **Criminal Law § 89— prior consistent statements — admissibility for corroboration**

Statements made by three witnesses on the day of the alleged rape to a sheriff's detective were competent for the limited purpose of corroborating the witnesses who made them.

9. **Criminal Law § 102— district attorney's argument — reference to race — no error**

The district attorney's argument which referred to defendants as three black males or three black men, which contended that the victim's hysteria following the alleged rape was genuine, and which suggested that ". . . the average white woman abhors anything of this type in nature that had to do with a black man" did not deprive defendants of a fair trial or violate their due process rights under the Fourteenth Amendment by injecting racial prejudice and inflaming the minds of the jurors against defendant.

10. **Criminal Law § 102— district attorney's argument — reference to capital punishment — no error**

The district attorney's jury argument suggesting that the only thing wrong with capital punishment was that it was not used, and that capital punishment was not a deterrent when people were convicted of capital crimes but never executed was well within the bounds of legitimate debate.

Chief Justice SHARP concurring.

Justices COPELAND and EXUM join in this concurring opinion.

Justice LAKE concurring in result.

DEFENDANTS appeal from judgment of *Thornburg, J.*, 28 October 1974 Session, CATAWBA Superior Court. This case was docketed and argued as No. 52 at the Spring Term 1975.

Defendants were tried upon bills of indictment, proper in form, charging them with the first degree rape of Deborah Darlene Case on 10 August 1974 in Catawba County.

The State's evidence tends to show that Deborah Darlene Case (Deborah) and Michael Stumphey (Michael) left their homes in Hollywood, Florida, on 29 July 1974 in company with another couple and hitchhiked to North Carolina for the purpose of attending a rock festival in Charlotte on the weekend of 10 August. Deborah and Michael were not married at this time but subsequently married on 23 August 1974, after the date on which Deborah was allegedly raped by defendants.

The two couples arrived in Charlotte prior to the commencement of the rock festival and decided to hitchhike to Chimney Rock. They left Chimney Rock and hitchhiked to Atlanta, Georgia. At this point the other couple returned to Florida, and Deborah and Michael hitchhiked back to Charlotte, North Carolina. They arrived in Charlotte on Friday evening, 9 August 1974, spent the night in a parking lot near the site of the rock festival, and decided to leave Charlotte and hitchhike to the State of Colorado for the purpose of getting married. Accordingly, on the morning of 10 August 1974 they hitchhiked west on I-77. Deborah was wearing a pair of Michael's blue jeans and they were carrying a back-pack, a duffel bag and a fishing pole. About 10 a.m., at a point near the intersection of I-77 and I-40 at Statesville, they were offered a ride by three black males in a red vehicle traveling west on I-40 toward Hickory. They accepted the offer and entered the car.

As the red vehicle proceeded west it stopped at a service station where the driver (defendant Clark) purchased gasoline. Then, according to the testimony of Deborah and Michael, the vehicle continued in a westerly direction for a short distance and the driver stated he was going to see a friend for a minute. The vehicle exited from I-40, traveled a short distance on a paved road, then entered a dirt road and eventually passed a house. At this point defendant Clark stated that his friend was not at home. The vehicle was then driven around for approximately one mile, returned to and crossed over I-40, and continued on a dirt road for approximately one mile to an area known locally as "V. O. Sipes Fish Pond." This pond is located in the general vicinity of Lookout Dam and Catawba River. Defendant Clark stopped at a point where a cable was stretched across the dirt road, turned the vehicle around, and all five

occupants got out and walked 50-75 yards down to the fish pond. At this time a man named James Franklin drove up in a blue vehicle. Franklin was looking for his stray coon dogs. He inquired whether anyone had seen the dogs. After a brief discussion he returned to his vehicle and left the immediate area.

At this point defendant Clark walked out of sight down a nearby path and shortly reappeared with a pistol in his hand. He said he intended to use the pistol to signal a friend who was in a boat out on the Catawba River. However, Clark never fired the pistol. At this time, defendant McClain, referred to as the "skinny one," asked Deborah to walk with him back to the car so he could talk with her. When they reached the parked vehicle defendant asked her to get in the car and she refused. McClain then pulled a knife and held it close to her stomach. She was afraid and called out to Michael who was coming back up the path. Michael told her to "cool it, babe, there's nothing we can do." Deborah testified that she was then thrown into the back seat of the car.

While Deborah was crouched in the back seat, defendant Clark approached the vehicle and ask her if she had removed her clothes. Deborah replied that she was in her menstrual cycle and Clark told her that did not make any difference. Thereafter, McClain, holding a knife in one hand, removed Deborah's blue jeans with the other and had sexual intercourse with her. When he had finished, defendant Clark returned to the car and engaged in sexual intercourse with her. Throughout this second engagement, Clark held a knife in his right hand. After Clark had finished, defendant Miller came up and asked Deborah if she could take a third one. She replied that she would not be lying there if she didn't have to. Defendant Miller then took the knife from Clark, entered the vehicle, and had sexual intercourse with Deborah. During all this time Michael was held at gunpoint some distance away and out of sight of the red vehicle.

Following the third engagement and while Deborah was getting dressed, James Franklin returned to the scene, still looking for his dogs. Deborah and Michael were told to "act natural." Everyone then got into the red vehicle. Defendant Clark and Michael were seated in the front; Deborah and the other two defendants were in the back. Franklin wrote down the license tag number as the red vehicle departed.

The car stopped at an I-40 overpass, Michael and Deborah got out, and they retrieved their belongings from the trunk. Clark then shook hands with Michael and wished him a nice day. Clark got back into the red car and the three defendants drove away. In a few minutes State Trooper Dennis Dillard came up the nearby exit ramp and Michael flagged him down. Trooper Dillard testified that Deborah was hysterical but said she did not want to go to the hospital. Michael told Trooper Dillard what had occurred, and the officer immediately issued a general alert over his police radio and commenced an unsuccessful search for a red vehicle occupied by three black males.

A short time thereafter, James Franklin emerged from the pond area and came upon Deputy Sheriff Ketchie of the Iredell County Sheriff's Department who had responded to the general alert. In the ensuing conversation, Franklin provided Deputy Ketchie with the license number of the red vehicle he had previously encountered near the fish pond.

In the meantime, Deborah was taken to Catawba Memorial Hospital where she was examined by Dr. James Wotring. Dr. Wotring testified that his examination of Deborah revealed the presence of immotile and motile sperm. Dr. Wotring said the only evidence of trauma was a very small abrasion on Deborah's right breast.

Following the medical examination, Deborah and Michael were questioned by Sgt. Price of the Catawba County Sheriff's Department, warrants were obtained for the three defendants, and they were arrested. After their incarceration, both Deborah and Michael identified all three defendants from photographs. The following morning, James Franklin identified defendants Carl Miller and Larry Campanella Clark from photographs furnished by Sgt. Price.

Defendants offered no evidence. On cross-examination of the State's witnesses, however, they elicited testimony tending to show that Deborah and Michael were hitchhikers, entered the red vehicle willingly and made no request to get out; that Deborah had previously engaged in acts of sexual intercourse; that Michael had been convicted of drug possession and of breaking and entering; that both Deborah and Michael had taken drugs (marijuana and THC) on the night before the incident; that Deborah had no injuries other than a small bruise on her

State v. Miller

breast; and that she offered no physical resistance during the various acts of intercourse with defendants.

Following the arguments of counsel and the charge of the court, the jury convicted each defendant of first degree rape and each was sentenced to death. Defendants appealed directly to the Supreme Court pursuant to G.S. 7A-27(a) assigning errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General; William B. Ray and William W. Melvin, Assistant Attorneys General, for the State of North Carolina.*

*Harold J. Bender and Wesley F. Talman, Jr., Attorneys for defendant appellants.*

HUSKINS, Justice.

[1] Prior to introduction of evidence defendant Clark moved for a continuance to enable his newly employed counsel to properly prepare his defense. Denial of the motion constitutes Clark's first assignment of error.

A motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling thereon is not subject to review absent abuse of discretion. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Stinson,* 267 N.C. 661, 148 S.E. 2d 593 (1966). However, if the motion is based on a right guaranteed by the federal or state constitution, the question presented is one of law and not of discretion and the decision of the court below is reviewable. *State v. Phillip,* 261 N.C. 263, 134 S.E. 2d 386, *cert. denied* 377 U.S. 1003, 12 L.Ed. 2d 1052, 84 S.Ct. 1939 (1964). The constitutional right to the assistance of counsel includes the right of counsel to confer with witnesses, to consult with the accused and to prepare his defense. *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 377, 60 S.Ct. 321 (1940) ; *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158, 53 S.Ct. 55 (1932).

The record discloses that Mr. Bender had represented all three defendants for over two months, and both he and Mr. Talman represented them throughout the trial. Attorney Talman was notified by defendant Clark on 21 October 1974 that he desired to retain him. Mr. Talman conferred with Clark for two hours on 25 October 1974 and stated that he intended to go to Statesville on 26 October 1974 to locate and interview wit-

nesses but was unable to do so by reason of the disappearance of his daughter, a fact not made known to the court until the morning of the trial. Mr. Bender was fully apprised of the fact that the case would be called for trial at the 28 October 1974 Session. He had previously filed a motion requesting permission to withdraw as counsel for defendant Clark by reason of ill feelings between Clark and McClain over the alleged theft of certain articles from Clark's home by McClain while McClain was free on bond. Permission to withdraw as counsel for Clark was denied, first by Judge Ervin and later by Judge Thornburg, the presiding judge. Mr. Bender made no contention that he was not ready for trial in Clark's case but merely stated that he felt he was placed in a position of conflict when Clark and McClain seemed to be turning against each another.

We think defense counsel Bender had ample opportunity from 12 August 1974, the second day after the commission of the alleged offense, until the day of the trial to confer with defendant Clark and all possible witnesses. During that time he had ample opportunity to prepare Clark's defense. No names of witnesses are shown. What defendant Clark expected to prove by possible witnesses in the Statesville area must be surmised. The oral motion for continuance is not supported by affidavit or other proof. This state of the record suggests only a natural reluctance to go to trial and affords no basis to conclude that Clark was denied the right to effective representation for lack of time within which to prepare and present his defense. The facts show no abuse of discretion and no violation of Clark's constitutional rights by the court's refusal to continue the case. *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974). The first assignment of error is therefore overruled.

[2]   Before pleading to the bill of indictment, defendants entered a plea in abatement, contending that the alleged offense occurred in Iredell County. Denial of that motion constitutes defendants' second assignment of error.

Former G.S. 15-134 (repealed effective 1 July 1975) provided that all offenses are deemed to have been committed in the county alleged in the indictment unless defendant denies same by plea in abatement. The statute did not state which party had the burden of proof if such plea is filed. "At common law, the burden of proof was upon the State to prove that the offense occurred in the county named in the bill of indictment. *State v. Oliver,* 186 N.C. 329, 119 S.E. 370 [1923]." *State v.*

State v. Miller

*Overman,* 269 N.C. 453, 153 S.E. 2d 44 (1967). Thus defendants' plea in abatement placed the burden on the State to show that Catawba County was the proper venue. The State carried its burden by offering the testimony of James Franklin, the man who was searching for his coon dogs when he chanced upon defendants and their captives at the Sipes fish pond. Mr. Franklin testified under oath that the spot where he saw a car "with three black men in it and a white woman and a white man" was on the west side of the Catawba River and in Catawba County. He testified that the Catawba River is the dividing line between Catawba County and Iredell County. No evidence to the contrary was produced by defendants. Hence there was no evidence to support the plea in abatement, while the evidence offered by the State supports the conclusion reached by the trial judge that the offense occurred in Catawba County as charged in the bills of indictment. There was no error in overruling the plea in abatement. This assignment is overruled.

Defendants challenged their in-court identification by Deborah Case, Michael Stumphey and James Franklin. The jury was excused and a voir dire conducted.

Deborah and Michael testified on voir dire that at 9:25 p.m. on 10 August 1974, the same day of the crime, they were shown three sets of six photographs—a set for each defendant. The first set contained one photo of defendant Miller; the second set contained one photo of defendant McClain; and the third set contained one photo of defendant Clark. Each set was composed of photographs of persons having the same general appearance with respect to race, age, hair type, hair color, and complexion of the defendant for whom that set was arranged. The witnesses were then instructed to look at the series of photographs and told they were not obligated to identify anyone. They were told they should not conclude or guess that the series of photographs contained the picture of the person or persons who committed the crime. They were told that it was just as important to free innocent persons from suspicion as to identify guilty parties. After viewing the photographs both Deborah and Michael identified each of the defendants. This took place after defendants had been arrested and were in custody. Each witness stated that identification of defendants was based upon the memory of them at the time of the crime and not on the photographs displayed by the officer.

The witness James Franklin viewed nine photographs on Sunday morning, 11 August 1974. The nine photographs included one photo of each defendant. Mr. Franklin identified defendants Miller and Clark but failed to recognize defendant McClain's picture. This witness stated that his in-court identification was based on his observation of defendants at the time of the crime and not on the photographs. He said: "I identify them by what I saw at the river."

Defendants offered no evidence on voir dire. The court found facts in substantial accord with the testimony of the State's witnesses and concluded that their in-court identification of defendants was of independent origin and in no way tainted by the photographic display. Thereupon, over objection, the witnesses were permitted to identify the three defendants in open court before the jury. This is the basis for defendants' third, eighth and fourteenth assignments of error.

Defendants contend their in-court identification was tainted by the pretrial photographic identification in that (1) they were not represented by counsel and (2) the circumstances surrounding the photographic identification were unnecessarily suggestive and conducive to irreparable mistaken identity.

[3] We find no merit in either prong of this contention. The law is firmly established that an accused has no constitutional right to the presence of counsel when eyewitnesses are viewing photographs for purposes of identification, and this is true regardless of whether the suspect is at liberty or in custody at the time. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974).

Identification by photograph was expressly approved in *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968). It was there held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U.S. 293, 301-302, 18 L.Ed. 2d 1199, 1206, 87 S.Ct. 1967, and with decisions of other courts on the question of identification by photograph."

[4] Applying the *Simmons* standard we find no impermissible suggestiveness in the photographic identification procedure used

in this case. Each witness viewing photographs was advised by the investigative officer that "the fact that the photographs are shown to you should not influence your judgment, you should not conclude nor guess the photographs contain the picture of the person or persons who committed the crime. You are not obligated to identify anyone. It is just as important to free innocent persons from suspicion as to identify guilty parties." Furthermore, Deborah Case and Michael Stumphey were in the presence of the defendants for the better part of an hour, and it may be inferred that they obtained an indelible impression of defendants' appearance. The photographic viewing took place only a few hours after the crime. Neither witness has ever identified anyone else. Both of these witnesses, and the witness James Franklin as well, were positive in their in-court identification. In light of the total circumstances, there is little chance that defendants were incorrectly identified. The whole of the evidence indicates that the in-court identification by these witnesses was independent in origin and based upon what the witnesses observed down "by the river." Impermissible suggestiveness amounting to a denial of due process has not been shown. The testimony meets the test of admissibility. The trial court so found, and when such findings are supported by competent evidence, as here, they are conclusive on appellate courts. *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971). *See State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971) ; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied* 386 U.S. 911, 17 L.Ed. 2d 784, 87 S.Ct. 860 (1967). Defendants' third, eighth and fourteenth assignments are overruled.

[5] A .38 caliber derringer pistol was identified as State's Exhibit 1 and admitted into evidence over defendants' objection. Defendants contend the pistol was never identified as the weapon allegedly used in connection with the commission of the crime charged and was therefore improperly admitted. This constitutes defendants' fourth and twentieth assignments of error.

Michael Stumphey testified the gun used by one of the defendants was a .38 caliber small derringer. "It had pearl or white handles and the rest of it was silver. I believe that it was a 2-shot derringer." Referring to State's Exhibit 1, he said: "That is the gun. . . . This gun right here seems to be the one that was used and held on me. That looks like the gun that they held on me; it is the same type; it is the same model that they had; well, it's the same kind; it looks like it. It is a .38 derringer.

I know it is a .38 derringer because I had one similar to it that was a .38. I knew it was a .38 when it was pointed at me. I could tell because the driver of the car showed me the shells. He showed me some shells. He had the shells in his hand."

As a general rule weapons are admissible "where there is evidence tending to show that they were used in the commission of a crime." *State v. Wilson,* 280 N.C. 674, 187 S.E. 2d 22 (1972). In fact, any article shown by the evidence to have been used in connection with the commission of the crime charged is competent evidence and properly admitted. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968). "So far as the North Carolina decisions go, any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials. Thus, weapons may be admitted where there is evidence tending to show that they were used in the commission of a crime or in defense against an assault." 1 Stansbury's North Carolina Evidence § 118 (Brandis rev. 1973).

Whether defendants are guilty or innocent of raping Deborah Case does not depend upon the absolute unmistakable identity of the pistol used to intimidate the victim and her companion. *State v. Patterson,* 284 N.C. 190, 200 S.E. 2d 16 (1973); *State v. Macklin,* 210 N.C. 496, 187 S.E. 785 (1936). All the evidence tends to show a relevant connection between the pistol identified as State's Exhibit 1 and the crime charged. Hence we hold the pistol was properly admitted. But if it be conceded, *arguendo,* that State's Exhibit 1 had not been sufficiently identified so as to render its admission erroneous, in view of the testimony that a gun of the same type and model and which looked like State's Exhibit 1 was held on Michael Stumphey by one of the defendants while the others were raping Deborah Case, its admission was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); *State v. Patterson, supra; State v. Fletcher* and *State v. St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). Defendants' fourth and twentieth assignments of error are overruled.

Defendants' fifth assignment of error is abandoned.

Deborah Case, the prosecuting witness, testified on cross-examination that prior to this occasion she had engaged in sexual intercourse. She was then asked: "On how many occasions?" "Have you ever had any experience with narcotics?" "Do you

---

State v. Miller

---

smoke marijuana?" The State's objection to each of these questions was sustained.

Michael Stumphey testified on cross-examination: "I have been convicted of or pleaded guilty to possession of marijuana, OPA, LSD, B and E, breaking and entering." The following questions were then put to Michael Stumphey in the course of the cross-examination:

1. "Were you after drugs [by breaking and entering]?"

2. "You were convicted of possession and did you have these drugs for resale or for your own use?"

3. "Have you on any occasion used these drugs?"

4. "How long did you live in Texas?"

5. "When did you move to Florida?"

6. "Were you working at that time?"

7. "Do you believe in God?"

8. "How did you get back to Florida following this incident?"

The State's objection to each of these questions was sustained. These rulings of the court constitute defendants' sixth, seventh, ninth, tenth, eleventh, twelfth and thirteenth assignments of error.

[6]  While a wide latitude is allowed in cross-examination, the scope of it rests largely within the trial judge's discretion. *State v. King*, 224 N.C. 329, 30 S.E. 2d 230 (1944); 7 Strong's N. C. Index 2d, Witnesses § 8, p. 703 and cases there cited. However, the record before us fails to show what the witnesses would have answered had they been permitted to do so. Thus it is impossible for us to know whether the rulings were prejudicial or not. Where the record fails to show what the answer would have been had the witness been permitted to answer, the exclusion of such testimony cannot be held prejudicial. *State v. Love*, 269 N.C. 691, 153 S.E. 2d 381 (1967); *State v. Brewer*, 202 N.C. 187, 162 S.E. 363 (1932). This rule applies not only to direct examination but to questions on cross-examination as well. *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970); *State v. Peeden*, 253 N.C. 562, 117 S.E. 2d 398 (1960); *State v. Jones*, 249 N.C. 134, 105 S.E. 2d 513 (1958); *State v. Maynard*,

---

---

247 N.C. 462, 101 S.E. 2d 340 (1958) ; *State v. Wagstaff*, 219 N.C. 15, 12 S.E. 2d 657 (1941).

Even so, we note that defendants were allowed to bring out on cross-examination that Deborah Case and Michael Stumphey were not married to each other; that Michael had marijuana in his possession and both he and Deborah used some of the drug the night before she was allegedly raped the following day; that they had hitchhiked together from Florida to Charlotte to Chimney Rock to Atlanta and back to Charlotte; that both of them used drugs; that they camped beside the road for a couple of nights, stayed in a camp ground one night, and at a motel for two nights; that sexual intercourse was not a new experience for Deborah; that Michael had no religious background; and that Michael had been convicted of various offenses involving drugs and breaking and entering. With all this impeaching evidence before the jury, it would strain credulity to conclude that the credibility of these two witnesses might have been further impaired by their answers to the questions hereinabove set out. Many of the questions referred to in these assignments of error, answers to which were excluded, were repetitious or immaterial. In our view the exclusion was harmless. Exclusion of evidence which could not have affected the result may not be held prejudicial. Exceptions to the exclusion of such testimony will not be sustained. *State v. Maynard, supra; State v. Wall*, 218 N.C. 566, 11 S.E. 2d 880 (1940) ; *State v. Coleman*, 215 N.C. 716, 2 S.E. 2d 865 (1939). Defendants' sixth, seventh, ninth, tenth, eleventh, twelfth, and thirteenth assignments of error are overruled.

[7]   Defendants contend the court erred by permitting the witness Joe Ketchie to identify a certified copy of a record of the Department of Motor Vehicles showing that license number BWS-181 was issued to Artis Parnell McClain of Statesville for a 1966 two-door Chevrolet, identification number 164376Y248946, and then allowing same to be read into evidence by the district attorney. This is defendants' fifteenth assignment of error.

G.S. 20-42 (b) provides in pertinent part as follows:

"The Commissioner and such officers of the Department as he may designate are hereby authorized to prepare under the seal of the Department and deliver upon request a certified copy of any record of the Department, . . . and

every such certified copy shall be admissible in any proceeding in any court in like manner as the original thereof, without further certification."

G.S. 8-35 provides, among other things, that copies of the records of any public office of the State shall be received in evidence and entitled to full faith and credit in any of the courts in this State when certified under seal of the office by the chief officer or agent in charge thereof.

These statutes, when construed *in pari materia,* clearly provide for the admission in evidence of the certificate here in question.

Defendants apparently concede that properly certified copies of records kept by the Department of Motor Vehicles are admissible in evidence but contend there was error in allowing the district attorney to read the certificate before the jury. Defendants say in their brief: "The proper procedure, it would appear, would be to allow the document to speak for itself and to have the document passed among the jurors. The reading of the document by the district attorney added an extra dimension to the document which was highly prejudicial to the defendants. The defendants were unable to cross-examine the district attorney concerning the document, and, therefore, were denied their right of confrontation." No further argument is made and no authorities are cited.

This assignment is without merit. In *State v. Moore,* 247 N.C. 368, 101 S.E. 2d 26 (1957), a highway patrolman was permitted to identify a similar certificate and read it into evidence. The statute expressly provides that such certified copy is admissible in any proceeding in any court in like manner as the original. We think it immaterial whether the certificate is read to the jury or passed among the jurors for their inspection. Obviously, defendants could not cross-examine the paper writing any better than they could cross-examine the district attorney. This assignment is overruled.

[8] On 10 August 1974, the day of the alleged rape, Deborah Case, Michael Stumphey, and James Franklin each made a statement to Sgt. Roy Price, a detective with the Catawba County Sheriff's Department. Following the testimony of these witnesses at trial, the statements were offered in evidence for the purpose of corroborating the witnesses. Officer Price related from the witness stand what the witnesses had told him

and the statement of each witness was in substantial accord with the testimony of the witness who made it. Admission of these statements through the testimony of Officer Price constitutes defendants' sixteenth assignment of error.

Each of these statements was competent for the limited purpose of corroborating the witness who made it. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *vacated for other reasons,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873 (1972); *State v. Norris,* 264 N.C. 470, 141 S.E. 2d 869 (1965); *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429 (1960); *State v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594, *cert. denied* 320 U.S. 749, 88 L.Ed. 445, 64 S.Ct. 52 (1943); 7 Strong's N. C. Index 2d, Witnesses, § 5. This assignment is overruled.

[9] Defendants' nineteenth assignment of error is based on nine exceptions to portions of the district attorney's argument to the jury. Seven of these exceptions relate to statements which defendants contend injected racial prejudice and inflamed the minds of the jurors against them. The following statements are under attack:

> "Now she testified that they were going out to Colorado to get married there because it was beautiful out there. She told you that they ended up by some fish lake there around the river somewhere and I argue to you that all of them were standing by the fish pond and then Mr. Franklin, the coon hunter here, said he came up and saw them there. That the white woman was up close or hugged up· to the white boy. Why? Why? Because as a woman she was apprehensive about being there in the company of three black males without somebody to hold on to. . . . "

EXCEPTION NO. 34

> "Now, members of the jury, I do not believe for one minute that Deborah Stumphey made up such a story as that including what each one of these men said to her. The language that was used to her by each one of these three black men . . . . "

EXCEPTION NO. 35

> " . . . She told you that a deadly weapon, a knife was put to her waist and one time during the intercourse at one time it was put against her neck. No, she did not make that up and if she was a mind to consent to intercourse,

don't you know as reasonable men and women, she was not going to consent whenever she was having her menstrual cycle. I argue to you that a person, white or black or yellow or any other color under the sun that would have intercourse with a woman during the time of her menstrual cycle is on the level of an animal, and only a person that would have such a deep desire to carry out the sex desire that he would do a thing like that. She told you that each one of these black men had intercourse with her and that they passed the knife from one to another."

EXCEPTIONS NOS. 36 and 37

". . . One woman may make the statement that this could not happen to me and they would kill her first and another may say I would resist if it meant my life but this may not be my wife or yours, but this woman in this case told you that she was afraid of these three black men and that they did display a gun and a knife there."

EXCEPTION NO. 39

"I want to tell you the evidence that this is believable and gives credence to the fact that these three black men raped Deborah Stumphey as she testified that they did and that is this. Her husband testified that whenever this car went on off down the road that she went to pieces, . . . said she was crying and upset there at the Oxford School Road. This is shown by an independent witness and I tell you that along with the testimony of Mr. James Franklin, that is the strongest testimony and evidence in the case."

EXCEPTION NO. 40

"Dennis Dillard came up he said and she was very excited and very upset and crying. Why in the world would want to be crying if she had gone voluntarily and consented to having sexual relations with these three men or sixteen or twenty. Don't you know and I argue if that was the case she could not come in this courtroom and relate the story that she has from this stand to you good people, because I argue to you that the average white woman abhors anything of this type in nature that had to do with a black man. It is innate within us, but she reported it and her boyfriend reported this rape within five minutes after they were let out on the highway up there."

EXCEPTION NO. 41

The substantive and procedural due process requirements of the Fourteenth Amendment mandate that every person charged with a crime has an absolute right to a fair trial before an impartial judge and an unprejudiced jury. *Rogers v. Richmond,* 365 U.S. 534, 5 L.Ed. 2d 760, 81 S.Ct. 735 (1961); *Lisenba v. California,* 314 U.S. 219, 86 L.Ed. 166, 62 S.Ct. 280 (1941); *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620 (1965); *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951).

It is the duty of both the court and the prosecuting attorney to see that this right is protected. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Thompson,* 278 N.C. 277, 179 S.E. 2d 315 (1971); *State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424 (1955); *State v. Phillips,* 240 N.C. 516, 82 S.E. 2d 762 (1954).

It is the duty of the district attorney to present the State's case with zeal and vigor and to use every legitimate means to bring about a just conviction. *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975). In the performance of his duties the district attorney owes honesty and fervor to the State and fairness to the defendant. "The public interests demanded that a prosecution be conducted with energy and skill, but the prosecuting officer should see that no unfair advantage is taken of the accused. It is as much his duty to see that a person on trial is not deprived of any of his statutory or constitutional rights as it is to prosecute him for the crime with which he may be charged. Nonetheless, zeal in the prosecution of criminal cases is to be commended and not condemned. If convinced of the defendant's guilt, the prosecuting attorney should, in an honorable way, use every power that he has to secure the defendant's conviction. At the same time, it is his duty to hold himself under proper restraint and avoid violent partisanship, partiality, and misconduct which may tend to deprive the defendant of the fair trial to which he is entitled, and it is as much his duty to refrain from improper methods calculated to bring about a wrongful conviction as it is to use every legitimate means to bring about a just one." 63 Am. Jur. 2d, Prosecuting Attorneys, § 27.

Ordinarily, the argument of counsel is left largely to the control and discretion of the presiding judge, and counsel is allowed wide latitude in the argument of hotly contested cases. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971), *vacated for other reasons,* 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873

(1972) ; *State v. Seipel,* 252 N.C. 335, 113 S.E. 2d 432 (1960) ; *State v. Barefoot, supra; State v. Little,* 228 N.C. 417, 45 S.E. 2d 542 (1947). Counsel may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom and the law relevant thereto. *State v. Conner,* 244 N.C. 109, 92 S.E. 2d 668 (1956) ; *State v. Willard,* 241 N.C. 259, 84 S.E. 2d 899 (1954). Language *consistent with the facts in evidence* may be used to present each side of the case. *State v. Monk, supra.*

On the other hand, counsel may not travel outside the record and place before the jury incompetent and prejudicial matters by injecting into his argument facts of his own knowledge or other facts not included in the evidence. *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974) ; *State v. Phillips, supra; State v. Dockery,* 238 N.C. 222, 77 S.E. 2d 664 (1953). Nor may counsel argue principles of law not relevant to the case. *State v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402 (1956).

It is the duty of the trial court, upon objection, to censure remarks not warranted by either the evidence or the law, or remarks calculated to mislead and prejudice the jury. When the impropriety is gross it is proper for the court to correct the abuse *ex mero motu. State v. Smith,* 240 N.C. 631, 83 S.E. 2d 656 (1954) ; *accord State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335 (1967).

When the foregoing principles of law are applied to the challenged portions of the district attorney's argument, we conclude that the alleged improprieties, considered in context, were insufficient to deprive defendants of a fair trial or violate their due process rights under the Fourteenth Amendment.

When the remarks embraced in Exceptions Nos. 34, 35, 36, 37, 39 and 40 are analyzed, it is apparent that they contain no objectionable reference to defendants. In each instance they were simply referred to as "three black males" or "three black men." It was obvious to the jury throughout the trial that defendants were members of the black race. The statements complained of gave the jury no information it had not already acquired by personal observation. Not every reference to race, nationality, or religion of a defendant, even when objectionable, requires a new trial. See Annot., Counsel's Appeal to Prejudice, 45 A.L.R. 2d 303 (1956). Certainly where, as here, the references to race are wholly innocuous, such remarks may not be held prejudicial.

This brings us to the question whether the district attorney's argument embraced in Exception No. 41 was so prejudicial as to constitute reversible error. We think not. The argument challenged here must be considered and appraised in light of the context and circumstances under which it was made. These circumstances reveal that defendants had the opening and closing argument to the jury, and the opening argument had already been made by Attorney Bender. While the arguments of defense counsel are not contained in the record on appeal, as they should be when the district attorney's argument is challenged, it is quite apparent that in his opening argument Mr. Bender strongly contended that Deborah Case had voluntarily consented to sexual intercourse with the three defendants; that she had hitchhiked from Florida with a man who was not her husband, sleeping beside the road, in camp grounds, and at motels; that she and her companion were drug users; and that Deborah had admittedly engaged in acts of sexual intercourse with other men. In that setting, counsel undoubtedly argued with vigor and conviction that Deborah was essentially a hippie prostitute who offered no resistance when approached by defendants seeking sexual favors. In reply to those arguments, the prosecutor was contending, not without justification, that had Deborah consented she would not have been crying when Officer Dillard arrived and that her hysteria was genuine, not feigned. Among the reasons advanced to support the logic of his contention about the matter, he said: "I argue to you that the average white woman abhors anything of this type in nature that had to do with a black man. It is innate within us, but she reported it and her boyfriend reported this rape within five minutes after they were let out on the highway up there." It was an *argument*, not an assertion.

It further appears that Exception No. 41 represents only an isolated incident in a lengthy argument to which no objections were interposed at trial. Although the record reveals that the trial judge, for reasons not disclosed, had left the bench and gone to his chambers during the district attorney's argument, this is of no legal significance. If summoned, the judge would have returned to the bench on a moment's notice and objections could have been timely lodged. Ordinarily, an objection and exception to argument comes too late after verdict. *E.g., State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970), *rev. on other grounds* 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290 (1971). When improper argument is made to the jury it is the duty of

opposing counsel "to make timely objection so that the judge may correct the transgression by instructing the jury." *State v. White,* 286 N.C. 395, 211 S.E. 2d 445 (1975) ; *State v. Hawley,* 229 N.C. 167, 48 S.E. 2d 35 (1948). However, if argument of counsel in a capital case is so grossly improper that removal of its prejudicial effect, after a curative instruction, remains in doubt, the general rule requiring objection before verdict does not apply. *State v. White, supra; State v. Williams, supra; State v. Miller, supra; State v. Dockery, supra; State v. Hawley, supra.* Here, the alleged impropriety challenged by Exception No. 41 is not of such magnitude. A curative instruction from the judge, had he been afforded an opportunity to give it, would have removed any prejudice possibly engendered by the argument. Silence of defense counsel when the argument was made is some indication that, at the time, they thought defendants were suffering little or no harm.

While we do not approve the language used by the district attorney, we do not think its use, in light of the facts and circumstances disclosed by the record, constitutes prejudicial error requiring a new trial. *See, e.g., State v. Bowen,* 230 N.C. 710, 55 S.E. 2d 466 (1949). Moreover, the evidence of guilt is overwhelming and there is no reasonable basis upon which to conclude that a different result would likely have ensued had the challenged argument been entirely omitted.

[10] The district attorney made the following argument with respect to capital punishment: "I argue to you that the only thing wrong with capital punishment is that it has not been used and certainly there is no deterrent to crime when a person is convicted of a capital crime and never executed. We have not had an execution in the State of North Carolina close to twelve years now, . . . " Defendants' objection and exception to this argument was not interposed at trial and appears for the first time in the record on appeal as Exception No. 42 embraced by their nineteenth assignment of error. Defendants contend these remarks constitute reversible error on authority of *State v. Hines,* 286 N.C. 377, 211 S.E. 2d 201 (1975).

We find no merit in this contention. In *Hines* a prospective juror under interrogation stated she was "not comfortable with capital punishment." The district attorney, in the presence of all the jurors, replied: "Well, everybody feels that way but this is the punishment that is provided at this point. *And to ease your feelings, I might say to you that no one has been put to death*

State v. Miller

*in North Carolina since 1961."* (Emphasis added.) We held that the statement was improper and prejudicial in that it tended to dilute the solemn obligation imposed upon jurors in capital cases by leading them to believe that Hines and his codefendants would not or might not be executed even if convicted. Such is not the import of the district attorney's remarks in this case. Here, the temper, tone and meaning of the district attorney's remarks were not likely to ease the feelings of the jury, or anyone else, regarding capital punishment. To the contrary, the prosecutor was scolding all persons connected with the administration of the criminal laws for their failure to execute those convicted of a capital crime. Rather than easing the feelings of the jury, the argument tended to emphasize the deadly seriousness of its duty. We think the challenged remarks were well within the bounds of legitimate debate.

For the reasons stated we hold that the portions of the district attorney's argument challenged by the nineteenth assignment of error do not represent an impropriety of such gravity as to constitute prejudicial error. Assignment nineteen is therefore overruled.

Defendants' motions to strike and for a mistrial are based on the introduction into evidence of the gun (S-1). These motions were properly overruled. Defendants' motion for a new trial was addressed to the sound discretion of the trial court whose action is not reviewable absent abuse of discretion. *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960). No abuse has been shown. There was plenary evidence to carry the case to the jury and support the verdicts. Hence no error appears from denial of motion to nonsuit. We have examined the charge and find no merit in the assignment of error addressed to it. We therefore overrule without discussion defendants' seventeenth, eighteenth, twenty-first and twenty-second assignments of error.

Prejudicial error not having been shown, the verdicts and judgments must be upheld.

No error.

Chief Justice SHARP concurring:

Had this been a close case on the facts I would have dissented and voted for a new trial on the ground that the solici-

State v. Miller

tor's argument as set out in the opinion of the Court was both improper and prejudicial. Because the evidence of the defendants' guilt is so decisive and overwhelming that I am entirely convinced there was no way for the State to have lost this case, I concur in the Court's opinion that the solicitor's argument did not affect the verdict. However, I am constrained to express my view that the Court's treatment of defendants' exceptions to this argument is not commensurate with the solicitor's infraction of the rules it reiterates in the opinion.

The only suggestion in the Court's opinion that it has any criticism of the challenged portions of the solicitor's argument is the statement, "While we do not approve the language used by the district attorney, we do not think its use, in light of the facts and circumstances disclosed by the record, constitutes prejudical error requiring a new trial." This mild disparagement, read in connection with the Court's characterization of the challenged argument as "alleged improprieties," and its comment that "zeal in the prosecution of criminal cases is to be commended and not condemned," is not likely to emphasize the Court's statement that it is the solicitor's duty "to hold himself under proper restraint . . . and avoid misconduct which may tend to deprive the defendant of the fair trial to which he is entitled. . . . "

The solicitor's argument added nothing to the State's case. It merely created a totally unnecessary situation to be dealt with on appeal. Under all the circumstances the argument can only be characterized as an egregious blunder which, in a case involving less conclusive evidence of defendants' guilt, would have resulted in all the expense, delay, and other strains upon the administration of justice which are inherent in retrials. In my view, the argument in this case deserves censure and should not be dismissed with only the comment, "We do not approve."

Justices COPELAND and EXUM join in this concurring opinion.

Justice LAKE concurring in result.

I concur in all parts of the opinion of Justice Huskins except in the suggestion therein that the argument of the prosecuting attorney was improper. I see no impropriety in it.

State v. Miller

In *State v. Westbrook*, 279 N.C. 18, 39, 181 S.E. 2d 572, this Court said:

"This Court has said that the argument of counsel must be left largely to the control and discretion of the presiding judge and that counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432; *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424; *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466; *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542. He may not, however, by argument, insinuating questions, or other means, place before the jury incompetent and prejudicial matters not legally admissible in evidence, and may not 'travel outside of the record' or inject into his argument facts of his own knowledge or other facts not included in the evidence. *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762; *State v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664; *State v. Little, supra*. On the other hand, when the prosecuting attorney does not go outside of the record and his characterizations of the defendant are supported by evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument. *State v. Brown, supra*.

\* \* \*

"In 53 AM. JUR., Trial, § 504, note 8, it is said, 'The line between denunciation and abuse which will reverse a conviction, and that which will not, \* \* \* seems to rest on the distinction between mere personal abuse and invective called forth by the character of the crime shown by the evidence.' \* \* \*

"Applying these principles to the present case, we find in the vigorous argument of the prosecuting attorney and his urging that the jury return a verdict of guilty of murder in the first degree without a recommendation as to punishment, which, in effect, fixes the punishment at death by asphyxiation, no departure from the evidence and legitimate inferences to be drawn therefrom."

*State v. Westbrook, supra*, was the unanimous opinion of this Court. The death sentence therein sustained was vacated on an entirely different point by the Supreme Court of the United States. See, *State v. Westbrook*, 281 N.C. 748, 191 S.E. 2d 68. The Supreme Court of the United States did not note any

error whatsoever in our decision so far as argument of counsel is concerned. Had the rule so adopted by us, approving the prosecuting attorney's argument, been deemed erroneous Westbrook would have been entitled to a complete new trial, not simply a vacating of the death sentence.

The tidal wave of civil rights fanaticism, which has swept over this nation, has washed into judicial opinions many errors which hamper the administration of criminal justice. In the slushy quagmire which has resulted, the rate of incidence of vicious crimes continues to rise in this State as it does elsewhere. Two of these errors are (1) the false idea that a prosecuting attorney must present the State's case in a calm, detached, neutral manner while defense counsel is free to employ any tactics and arguments his ingenuity can suggest, and (2) race is a fact which can never be mentioned in a criminal trial.

The prosecuting attorney is an officer of the court. So is the defense counsel. Both are members of the Bar and both are obligated to represent their clients pursuant to the high standards set in its Code of Ethics. It is not proper for either knowingly to misstate the law, distort the evidence, draw unwarranted inferences therefrom, inject irrelevancies or appeal to prejudice in his argument to the court or the jury, but neither is required to present his argument with the impartiality and calmness of voice expected of the judge in delivering his charge to the jury.

The prosecutor, like the defense counsel, is an advocate. Prior to trial he has examined the State's evidence and interviewed witnesses. As a result, he has satisfied himself of the defendant's guilt to the extent of drawing the bill of indictment and determining to place the defendant on trial and seek his just conviction and punishment. The grand jury, in his absence, has heard some or all of the State's witnesses and has found probable cause. It is the prosecutor's duty to present the State's case in its strongest, fair light. The defense counsel owes a similar duty to the defendant. This is our adversary system of justice—zealous, fair advocacy before an impartial judge and jury.

It is well for the trial judge to remain on the bench throughout arguments, both by the prosecuting attorney and by the defense counsel, in order to avoid improper remarks by counsel in their zeal and in the heat of their battle for the

jury's verdict. It would also seem advisable for all arguments to the jury to be taken by the court reporter and to be included in the record on appeal in the event the defendant assigns as error the remarks of the prosecutor.

Zeal, oratory and emphatic presentation by counsel in presenting evidence or argument thereon, be he prosecutor or defense counsel, is to be commended, so long as it does not tend to divert the jury's attention from the evidence in the case. The prosecutor, like the defense counsel, should be left free to strike hard blows, so long as they are fair. The test is thus stated by Justice Huskins, speaking for a unanimous Court in *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125, wherein we allowed a new trial for the prosecuting attorney's "departure from the evidence and the legitimate inferences to be drawn therefrom":

> "Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom. *State v. Conner,* 244 N.C. 109, 92 S.E. 2d 668 (1956) ; *State v. Willard,* 241 N.C. 259, 84 S.E. 2d 899 (1954) ; *State v. Campo,* 233 N.C. 79, 62 S.E. 2d 500 (1950). Language may be used *consistent with the facts in evidence* to present each side of the case."

Again, in *State v. Stegmann,* 286 N.C. 638, 654, 213 S.E. 2d 262, this Court said :

> "It is the duty of the prosecuting attorney in all phases of the trial to present the State's case with earnestness and vigor and to use every legitimate means to bring about a just conviction."

Thus, the test of proper argument is whether it is relevant to the issue to be decided by the jury and a fair statement of the evidence and of legitimate inferences and conclusions to be drawn therefrom. It is not required that all fair minded persons will agree with counsel's inferences and deductions from the evidence. As we said in *State v. Monk, supra,* it is enough that they be *reasonable* and *relevant* to the issue.

The argument of the prosecuting attorney in this case that "the average white woman abhors anything of this type in nature that had to do with a black man," meets this test and was legitimate, proper argument.

The very nature of the crime of rape raises for the jury's determination the question of whether the alleged victim con-

State v. Miller

sented to the sexual intercourse. The burden rests upon the State in every rape case to prove beyond a reasonable doubt that she did not so consent. The determination of whether she did or did not consent is not a matter in which the jury is limited to her denial of consent in her testimony. Consent, or lack of it, is also a matter of inference or conclusion from the surrounding circumstances. Both the State and the defense are entitled to call to the jury's attention, in argument, matters in evidence from which may be drawn the inference or conclusion it urges the jury to draw. The appearance of the defendants, identified in the courtroom by the alleged victim as her assailants, is a matter before the jury. Furthermore, in the testimony of the State's witness, Mr. Franklin, they are referred to as "colored." Obviously, the jury knew, before the argument by the prosecuting attorney that this is a case in which the State charges three Negro men with the rape of a white woman.

Is it then a legitimate inference that, because of this racial difference between the participants, the alleged victim did not consent to the intercourse? Of course it is. Every boy and girl of junior high school age knows that personal appearance is a factor in the desire for and willingness to accept sexual relations. No principle of law requires members of this Court to pretend to be ignorant of a truth we have all known since before we first began dating members of the opposite sex. Personal attractiveness to members of the other sex is affected by many things—race, cleanliness, facial features, size, shape, manner, clothing and many others. One who doubts it need only look at television and other commercial advertising. Of course, every person is not affected in the same way by the race of another or by other aspects of his or her personal appearance, but to say that the race of a man proposing sexual intercourse to a woman is not a legitimate factor in determining her consent to his advances is utterly unrealistic.

No provision of the State or Federal Constitution requires that racial difference be ignored in the trial of an action in which it is relevant to an issue to be determined. As Benjamin Disraeli, a member of a minority, said: "No man will treat with indifference the principle of race, for it is the key to history." Certainly, common experience and observation lead to the conclusion that racial difference is relevant to the question of a woman's consent to acceptance of a man as her partner in sexual relations.

It is important to remember that the prosecuting attorney mentioned race only on the question of consent. This injects no prejudice into the case. He did not argue that these defendants are Negroes and, therefore, more likely to commit rape than three white defendants would be. Race of the defendant would not be relevant to a prosecution for robbery, burglary, larceny, murder or reckless driving, just as personal uncleaniness, filthy dress or facial expression would not be. Race would be completely irrelevant to the determination of the punishment to be inflicted upon the convicted rapist or a defendant convicted of any other crime. Obviously, it would be improper argument for a prosecuting attorney to ask a jury to infer that because a defendant is a member of the Negro race, or of any other race or group, he committed one of these other offenses, or to argue his race as a basis for inferring any other element of the crime of rape, but, on the issue of consent in a charge of rape, for a court to say that racial difference between the man and the woman is not relevant and, therefore, not a proper matter for argument, is simply contrary to human experience. The State's argument was not that rape of a white woman by a Negro man is a worse crime than her rape by a white man. The argument was that the prosecutrix did not consent to the intercourse. In my opinion, the argument was entirely proper.