STATE OF NORTH CAROLINA v. HENRY SCOTT MARTIN

No. 7920SC997

(Filed 6 May 1980)

1. **Criminal Law § 91.4— employment of new counsel—denial of continuance**

The trial court in a driving under the influence of intoxicants case did not abuse its discretion in refusing to grant defendant a continuance because he had employed new counsel an hour before the trial where the record shows that defendant was ably represented by defense counsel in a relatively un-complicated case which involved few witnesses and even fewer disputed facts.

2. **Criminal Law § 18.3— trial de novo in superior court—trial on "statement of charges"**

Defendant was properly tried upon a "statement of charges" pursuant to G.S. 15A-922(c) at his trial *de novo* in the superior court after his appeal from his conviction in the district court of driving under the influence of intoxicants where the superior court judge found that the citation upon which defendant was tried and convicted in the district court was insufficient because it was not signed by a magistrate.

3. **Automobiles § 126.3— breathalyzer test—machine set up in absence of attorney**

    The results of a breathalzyer test were not inadmissible because the breathalyzer operator performed preliminary steps of setting up the machine before defendant's attorney arrived to view the testing procedure.

4. **Automobiles § 126.3— breathalyzer test—maintenance of machine — no showing required**

    The State was not required to establish that it had followed certain procedures to maintain breathalzyer equipment before evidence of tests conducted with the equipment was admissible in a prosecution for driving under the influence of intoxicants. G.S. 20-139.1(b).

APPEAL by defendant from *Lupton, Judge.* Judgment entered 12 February 1979 in Superior Court, STANLY County. Heard in the Court of Appeals on 18 March 1980.

Defendant was convicted in the District Court of Stanly County on 22 May 1978 of operating a motor vehicle on the public highway while under the influence of an intoxicating beverage. He appealed to the Superior Court for a trial *de novo* whereupon the State produced evidence tending to show the following:

Shortly after midnight on 8 January 1978, State Highway Patrolman Coy Blackman and Albemarle Auxiliary Police Officer Jack Blakenship were on patrol in Richfield, North Carolina, when they observed a 1976 Chevrolet truck proceeding north on Highway 49 at a slow rate of speed, approximately 30 miles per hour in a 55-miles-per-hour zone. The truck was pulling a trailer on which was loaded a "Pizza Place" sign. Patrolman Blackman recognized it as the same truck he had observed some two hours earlier parked on the shoulder of the highway about seven miles west of the point it was then travelling. He testified that, when he first saw the parked truck, defendant was standing alongside it and that he [Blackman] pulled up to inquire if he could be of assistance. The defendant indicated that everything was all right and got back inside the truck.

Later that night, about 11:30, the officer observed the truck still parked on the roadside. Defendant "was laid off toward the right of his vehicle," and, in Blackman's opinion, "was a drunk driver parked inside the pickup truck sleeping it off." It was only some thirty minutes later when Blackman saw the truck travelling down the road. It "crossed the center line three or four times

and it was weaving from the center line to the edge." Upon stopping the defendant, Blackman detected a strong odor of alcohol about the defendant's person, noticed that his movements were slow, his face was flushed, and that he was unsteady on his feet. Blackman arrested defendant for driving under the influence and took him to the Stanly County Jail where they were met by Trooper Charles Cook, a duly licensed breathalyzer operator. Officer Cook read the defendant his rights pursuant to G.S. § 20-16.2(a), and defendant was allowed to call an attorney. The attorney arrived some 35 minutes after the defendant was brought to the station and conferred with the defendant upon arriving. Trooper Cook then administered the breathalyzer test to defendant in the presence of his attorney. The test showed a reading of .26%.

Officer Cook testified further that, based on his observations of the defendant, he had an opinion independent of the test results that defendant "was very much under the influence of alcoholic beverages."

Defendant testified that on 8 January 1978 he was on his way to Raleigh from Charlotte to deliver a sign. He said he had experienced battery problems and a blow-out and, for those reasons, was unable to leave Charlotte until late that evening, "approaching 10" o'clock. He had drunk one can of beer around 1:00 or 2:00 that afternoon, but by the time he left on his trip that evening, he "felt no effects whatsoever . . . from any of the beer. . . . One can is all I drank that evening."

Defendant said he had pulled off the highway and parked on the shoulder because he was "very tired" and his back "was in extreme pain." He testified he had had back problems since he was a teenager. His intention was to sleep in his truck that night and continue on to Raleigh the next morning. Before retiring, he retrieved "a piece of a fifth of Vodka" from the back of the truck and drank the contents "straight" to help him relax and to ease his back pain. He then locked himself in the cab of the truck, "laid down across the seat on my right side and proceeded to go to sleep."

According to defendant he was awakened sometime later by someone pounding on the door of the truck and shining a flashlight in his face. Defendant testified that the person iden-

tified himself as a law enforcement officer and told defendant to move his truck "on down the road" immediately, that he was too close to the road and could not sleep there. Defendant did not know who the officer was, but he thought it was Officer Blackman. He said he pulled onto the highway and drove down the road "because he told me to do it and for no other reason . . . . I did not willfully and intentionally operate my truck on the highway in that condition."

The defendant admitted that he had been convicted, upon guilty pleas, of driving under the influence of intoxicants in this State on three other occasions, specifically, 8 March 1972, 27 July 1973, and 27 July 1974.

The jury found him "Guilty of driving a motor vehicle on a highway of this State while under the influence of an intoxicating liquor," in violation of G.S. § 20-138. From a judgment imposing a jail sentence of six months, suspended for three years on stated conditions, the defendant appealed.

*Attorney General Edmisten, by Associate Attorney Barry S. McNeill, for the State.*

*Gerald R. Chandler for the defendant appellant.*

HEDRICK, Judge.

[1]  Based upon approximately 65 exceptions noted in the record, defendant brings forward and argues 30 assignments of error. First, he contends that the trial court erred as a matter of law by refusing to grant him a continuance before proceeding to trial in the Superior Court. Although defendant concedes that the granting of a continuance is a matter within the discretion of the court, he argues that the court abused its discretion in this case for the reason that "new counsel . . . [was] employed about 1 hour before the case was called for trial," and did not have adequate time to prepare the case.

Had counsel been afforded more time to prepare this case, the record on appeal might have been even more voluminous than its present 182 pages, 100 pages of which constitute evidence adduced primarily by defendant's counsel on direct and cross-examination. We disagree that the defendant was prejudiced in the trial of his case by Judge Lupton's refusal to allow a contin-

uance. To the contrary, the record establishes to our satisfaction that defense counsel more than ably represented his client in a relatively uncomplicated case which involved few witnesses and even fewer disputed facts, but which nevertheless required more than three days' court time. Defendant has failed to show that the court abused its discretion by denying his motion. This assignment of error is patently without merit.

[2]  Defendant's next five assignments of error relate to his trial in the Superior Court upon a "misdemeanor statement of charges." The record discloses that, when this case came on for trial *de novo* in Superior Court, Judge Lupton found that the citation upon which the defendant was tried and convicted in the District Court was insufficient for that it was not signed by a magistrate. He thereupon ordered that the district attorney prepare, and the defendant be tried upon, a "statement of charges" pursuant to G.S. § 15A-922(c). Upon defendant's motion to dismiss the "misdemeanor statement of charges" thereafter filed, the court found that the statement "makes no material change in the pleadings in that it charges the identical offense theretofore charged" in the insufficient citation. The judge denied defendant's motion and ruled that the State could proceed to trial on the statement as filed. Defendant excepted and argues on appeal that trial on the misdemeanor statement could only have been had in District Court.

We disagree. The provisions of Chapter 15A, specifically G.S. § 15A-922, pertinent to the resolution of this question, provide as follows:

(b) Statement of Charges.

(1) A statement of charges is a criminal pleading which charges a misdemeanor. . . .

. . .

(e) . . . If the defendant by appropriate motion objects to the sufficiency of a criminal summons, . . . at the time of or after arraignment in the district court *or upon trial de novo in the superior court,* and the judge rules that the pleading is insufficient, *the prosecutor may file a statement of charges,* but a statement of charges filed pursuant to this authorization may not change the nature of the offense. [Emphasis added.]

It is clear that the statement of charges filed in this case upon trial *de novo* in Superior Court fully complied with the procedure contemplated by the foregoing statutory provisions. Moreover, only when a proceeding is *initiated* in the Superior Court—not when it arrives there by way of appeal, as here—is the State required to proceed upon information or indictment. *See* G.S. §§ 15A-922(g), 15A-923. Defendant's assignments of error based on the denial of his motion to dismiss the misdemeanor statement of charges are likewise without merit.

[3]　Next, defendant assigns error to the admission into evidence of the breathalyzer test results. At the outset he contends that the evidence should have been suppressed because the breathalyzer operator, Officer Cook, performed preliminary steps of setting up the machine before his attorney arrived to view the testing procedure. He argues that he had an absolute right to have his attorney view all the procedures necessary to give the test.

G.S. § 20-16.2(a)(4) prescribes that a person arrested for driving under the influence "has the right to call an attorney . . . to view for him the testing procedures; but that the test shall not be delayed for this purpose for a period in excess of 30 minutes from the time he is notified of his rights."

Our Supreme Court has recently concluded that the thirty-minute time limit referred to in the statute is absolute, and that a person enjoys no constitutional right to confer with counsel before deciding whether to submit to the breathalyzer test. *Seders v. Powell,* 298 N.C. 453, 259 S.E. 2d 544 (1979). "[A] person accused under the statute has no right to delay the test in excess of thirty minutes while waiting for his attorney to arrive or to return his call." *Etheridge v. Peters,* 45 N.C. App. 358, 263 S.E. 2d 308 (1980). If an accused has no constitutional or statutory right to delay taking the test beyond the thirty-minute limit for the purpose of conferring with an attorney, *a fortiori* he or she has no absolute right to demand that an attorney view the entire process involved in administering the test, including the preliminary steps necessary to ready the machine itself.

Moreover, the record in this case shows that the defendant was allowed to have his attorney present for the actual taking and recording of his breath sample, even though the test was

thereby delayed past the thirty-minute limit. This defendant surely has no room to complain.

[4] Defendant's remaining four arguments by which he attacks the admissibility of the breathalyzer reading relate to evidence regarding compliance by the State with "preventive maintenance procedures." He contends that the State was required to establish that it had followed certain procedures to maintain the breathalyzer equipment before evidence of test results was admissible, and that the State's evidence in this case was insufficient to establish complaince. We deem it unnecessary to consider the sufficiency of the evidence because we do not believe the State is required to offer such proof. What the State must establish under the Statute, G.S. § 20-139.1(b), are (1) that the person administering the test possessed "a valid permit issued by the Department of Human Resources for this purpose" and (2) that the test was "performed according to methods approved by the Commission for Health Services". These requirements were fully met in this case. Officer Cook testified that he was duly licensed and his permit was introduced into evidence. Moreover, he testified extensively, primarily on cross-examination, that he followed the procedures promulgated by the Department of Human Resources in performing the test. The "breathalyzer operational check list" issued by the Department, which he was required to and did follow when he administered the test to the defendant, was introduced into evidence. This evidence clearly establishes the admissibility of the breathalyzer test results under the requirements of the statute, and the State need not offer proof of "preventive maintenance procedures." See State v. Eubanks, 283 N.C. 556, 196 S.E. 2d 706 (1973); State v. Powell, 279 N.C. 608, 184 S.E. 2d 243 (1971).

By several assignments of error, the defendant challenges the court's rulings denying his motions for judgment as of nonsuit and for appropriate relief. We think it obvious that the evidence was plenary to require its submission to the jury and to support the verdict.

Defendant has brought forward and argued other assignments of error which we have not discussed. However, we have carefully considered these assignments of error and the ex-

ceptions upon which they are based, and find them to be meritless.

We hold the defendant had a fair trial free from prejudicial error.

No error.

Judges WEBB and WELLS concur.