STATE v. CHASE

· [117 N.C. App. 686 (1995)]

STATE OF NORTH CAROLINA v. BARBARA ANN CHASE, Defendant

No. 9428SC341

(Filed 7 February 1995)

### 1. Indictment, Information, and Criminal Pleadings § 8 (NCI4th)— gambling—sufficiency of misdemeanor statement of changes—case initiated in district court

There was no error in a prosecution for gambling where defendant contended that the trial court had erred by failing to dismiss the misdemeanor statement of charges made by the State in superior court on the date of trial, but the case was initiated in district court, and N.C.G.S. § 7A-271(b) and N.C.G.S. § 7A-290 expressly provide the superior court with jurisdiction over appeals by defendant from district court.

**Am Jur 2d, Indictments and Informations §§ 277 et seq.**

### 2. Indictment, Information, and Criminal Pleadings § 8 (NCI4th)— gambling—sufficiency of statement of charges

A misdemeanor statement of charges was sufficient to charge defendant with two counts of gambling where the statement referred to violation of N.C.G.S. § 14-292, and states that defendant unlawfully and willfully operated a game of chance, "a poker machine by paying a player money for said player's score."

**Am Jur 2d, Indictments and Informations §§ 66 et seq.**

### 3. Indictment, Information, and Criminal Pleadings § 8 (NCI4th)— gambling—new statement of charges—continuance denied

There was no abuse of discretion in a gambling prosecution where the trial court granted defendant's motion to dismiss the warrants but allowed the State to file misdemeanor statements of charges and denied defendant's motion for a continuance because the statement of charges made no material change in the pleadings.

**Am Jur 2d, Indictments and Informations §§ 29 et seq.**

### 4. Gambling § 34 (NCI4th)— poker machine—evidence sufficient

There was sufficient evidence of gambling to conform to a misdemeanor statement of charges involving a poker machine where the evidence clearly showed that defendant, the employee

in charge of the station where the machines were located, operated a machine and there was testimony concerning cashing in points for money from defendant.

**Am Jur 2d, Gambling §§ 147 et seq.**

**5. Gambling § 33 (NCI4th)— gambling—instructions—definition of betting**

The trial court did not err in a gambling prosecution by failing to give the proposed jury instructions submitted by defendant and in failing to give jury instructions on the definition of "betting."

**Am Jur 2d, Gambling § 169.**

Appeal by defendant from judgment entered 5 October 1993 by Judge Chase B. Saunders in Buncombe County Superior Court. Heard in the Court of Appeals 9 January 1995.

*Attorney General Michael F. Easley, by Associate Attorney General Michael S. Fox, for the State.*

*Russell L. McLean, III for defendant-appellant.*

JOHNSON, Judge.

Defendant Barbara Ann Chase was tried and convicted of gambling in Buncombe County District Court; defendant appealed to Buncombe County Superior Court. At the start of the proceedings in superior court, defendant moved for a dismissal claiming that the warrants which charged defendant with gambling were "fatally defective" and "failed to put defendant on proper notice." The State argued that the warrants were sufficient; in the alternative, if the court ruled that the pleadings were insufficient, the State would file statements of charges pursuant to North Carolina General Statutes § 15A-922(e) (1988). The court granted defendant's motion and allowed the State to file misdemeanor statements of charges. Defendant then moved to dismiss the misdemeanor statements of charges, alleging under North Carolina General Statutes § 15A-923(1988) that either a bill of information or an indictment is required to proceed in cases which are initiated in superior court. The trial court dismissed defendant's motion. Defendant made other motions which were denied by the trial court which will be discussed more fully in this opinion.

At trial, the State presented evidence in the form of testimony from detective Robert Carraway of the Buncombe County Sheriff's Department. Mr. Carraway worked with the vice squad as an undercover agent; the vice squad is responsible for investigating gambling offenses, illegal liquor, and drugs. Mr. Carraway had approximately one and one-half years experience enforcing the gambling laws.

During January and February 1993, Mr. Carraway worked undercover at five different locations in Buncombe County for gambling offenses, one of which was the BP station on Highway 74 in Fairview. On these undercover operations, Mr. Carraway would enter the location in plain clothes and play the machines in question. While there, he would buy drinks and converse with the store operators and the other people playing the machines. On two specific dates, 5 February 1993 and 9 February 1993, Mr. Carraway observed defendant working as a clerk in the BP station in Fairview. Mr. Carraway identified defendant as the person who had been the clerk in the store on those evenings; he also identified defendant's sister and stated that he could tell the difference between the two sisters.

Mr. Carraway described the machine he played as a television screen which comes up with computer images of cherries and other objects which roll in several columns on the screen. A bet is placed on the game by inserting $1, $5, $10, or $20 into the machine. After the money is placed in the machine, the screen begins to roll with different symbols flashing on the screen. The symbols will eventually stop rolling on their own if no action is taken. There is also a button to stop the symbols, but they do not stop immediately after you hit the button. One of the actual machines Mr. Carraway played at the BP station in Fairview was identified and entered into evidence. Mr. Carraway demonstrated how to use the machine, how to place bets on the machine by betting a certain number of points, and how to accumulate credits by winning bets on the machine.

Mr. Carraway testified that he played this type of game at the BP station in Fairview on 5 February 1993. On that date, he entered the store through the front door and saw defendant behind the counter. He recognized her and knew her name because he had talked to her on previous occasions in the store. Mr. Carraway went to the counter and got change for $20 and proceeded to play the machine in the back corner. After he finished playing, he approached defendant and asked her to cash in his points. Defendant cleared the machine, came back to the register and gave Mr. Carraway $10 for his points. Mr. Carraway

spent approximately $15 to win the $10. Mr. Carraway went back to the same store on 9 February 1993, again saw defendant behind the register, bought some grapefruit juice and proceeded to play on one of the machines. He accumulated 200 points on the machine; he cashed this point total in for $10 which defendant paid him out of the cash register.

On cross-examination, Mr. Carraway testified that the machine which was used in court had a North Carolina Revenue Stamp attached to it. He also testified that certain types of these machines are legal if used for amusement and that a player can exchange points for up to $10 in coupons or prizes but not money. Mr. Carraway never saw any coupons or prizes being issued for points on the machines at the BP station.

Rebecca Reel, an employee for the accounting firm which does the payroll for the convenience stores where defendant worked, testified for defendant. Ms. Reel brought payroll records of defendant to court, indicating that defendant's first paycheck was written on 12 March 1993. On cross-examination, Ms. Reel testified that she had no first-hand knowledge of defendant's actual working hours or whether it was defendant who was actually paid for working at a store.

Defendant testified that she was primarily employed as a certified nursing assistant at the Black Mountain Center, a mental retardation institute. She has worked third shift at that facility for the past two years from 11:00 p.m. until 7:30 p.m. Defendant further testified that she also worked for C & F Convenience Stores and began work part-time in March 1993 as a cashier. Defendant testified that there are machines to play in the store in which she worked and that she was instructed to pay up to $10 in merchandise from the store for winners. This was paid by giving out a coupon or credit voucher. Defendant testified that she was not working in the store on either 5 February 1993 or 9 February 1993, and that she was working the third shift at Black Mountain Center on both of those days. Defendant testified that the only time she had seen Mr. Carraway was when he arrested her on 31 March 1993. Defendant testified that she has a sister who manages the BP station.

On cross-examination, defendant testified that she did not fill in at the BP station when someone was sick during the months of January and February in 1993. Defendant further testified that she has worked at her convenience store job and the Black Mountain Center on the same day and that there was nothing that would prevent her

from working at both places on the same day. Defendant also testified that she would not have been working at Black Mountain Center during the time, approximately 8:00 or 9:00 p.m., when Mr. Carraway testified the gambling incidents took place at the BP station.

The jury found defendant guilty of two counts of gambling. The trial judge consolidated the cases for sentencing and imposed a sentence of six months incarceration which was suspended for a period of five years, and placed defendant on supervised probation for one year with a $100 fine. Defendant has appealed to our Court.

[1] Defendant first argues on appeal that the trial court erred in failing to dismiss the misdemeanor statements of charges made by the State in superior court on the date of the trial in violation of North Carolina General Statutes § 15A-923. We disagree with defendant. We note that North Carolina General Statutes § 15A-923(a) clearly states that "[t]he pleading in felony cases and misdemeanor cases *initiated* in the superior court division must be a bill of indictment, unless there is a waiver of the bill of indictment as provided in G.S. § 15A-642. If there is a waiver, the pleading must be an *information*. . . . " (Emphasis added.) The instant case was initiated in district court. North Carolina General Statutes §§ 7A-271(b) (1989) and 7A-290 (1989) expressly provide the superior court with jurisdiction over appeals by a defendant from district court. Defendant's first assignment of error is overruled.

[2] Defendant next assigns as error the trial court failing to dismiss the misdemeanor statements of charges charging a violation of North Carolina General Statutes § 14-292 (1993) because the charges stated in the misdemeanor statements of charges failed to state a crime by failing to allege each and every element of the criminal charge referred to in the said statute. Defendant asserts that "[t]here was nothing in the misdemeanor statement[s] of charges alleged as an element that a bet was placed, which is an element of the charge and therefore one of the elements of the charge is missing." We disagree.

Defendant was charged with the offense of gambling, a violation of North Carolina General Statutes § 14-292, which reads:

Except as provided in Part 2 of this Article, any person or organization that operates any game of chance or any person who plays at or bets on any game of chance at which any money, property or other thing of value is bet, whether the same be in stake or not, shall be guilty of a misdemeanor.

Each misdemeanor statement of charges stated that "defendant did unlawfully and willfully operate a game of chance; to wit a poker machine by paying a player money for said player's score."

In *State v. Morgan*, 133 N.C. 743, 45 S.E. 1033 (1903), our Supreme Court was faced with a defendant's motion to quash an indictment because the indictment did not charge that the games being played were ones of chance and that they were played at a place or tables where games of chance were usually played. The Court held that

> [i]t was not necessary to charge in the indictment that the games played at the gaming-house were games of chance. That is sufficiently implied in charging that the defendant kept a common gaming-house, the word "gaming" having a definite meaning in law, i.e., gambling, the act of playing games for stakes or wagers.

*Morgan* at 744-45, 45 S.E. at 1034.

In the instant case, in each of the misdemeanor statements of charges, defendant is charged with the offense of gambling. The misdemeanor statements of charges reference the violation of North Carolina General Statutes § 14-292, and state that defendant unlawfully and willfully operated a game of chance, "a poker machine by paying a player money for said player's score." We find, with *Morgan* as our guide, that the misdemeanor statements of charges were sufficiently alleged so as to charge defendant with two counts of gambling. *See* North Carolina General Statutes § 15A-924(a)(5) (Cum. Supp. 1994), stating that a criminal pleading must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." *See also State v. Jordan*, 75 N.C. App. 637, 331 S.E.2d 232, *disc. review denied*, 314 N.C. 544, 335 S.E.2d 23 (1985). Defendant's assignment of error is overruled.

[3] Defendant next argues that the trial court erred by failing to allow a continuance of the trial "to give the defendant an opportunity to prepare a defense to the new statement[s] of charges issued against her on the day of the trial in violation of her statutory rights, state and federal constitutional rights." We disagree. Pursuant to North Carolina General Statutes § 15A-922(b)(2) (1988),

**STATE v. CHASE**

[117 N.C. App. 686 (1995)]

[u]pon appropriate motion, a defendant is entitled to a period of at least three working days for the preparation of his defense after a statement of charges is filed, or the time the defendant is first notified of the statement of charges, whichever is later, unless the judge finds that the statement of charges makes no material change in the pleadings and that no additional time is necessary.

In the case *sub judice*, the trial judge apparently found that the statements of charges made no material change in the pleadings and that no additional time was necessary. We will not disturb the trial judge's denial of a motion for a continuance absent an abuse of discretion. *State v. Martin*, 46 N.C. App. 514, 265 S.E.2d 456, *disc. review denied*, 301 N.C. 102 (1980). We find no such abuse in the instant case.

[4] Defendant next assigns as error the trial court's denial of defendant's motion to dismiss at the close of the State's evidence and all of the evidence and that the evidence was insufficient as a matter of law to go to the jury because the State's evidence failed to conform to the misdemeanor statements of charges. Defendant argues that there is no evidence that defendant operated the machine or that gambling took place. We disagree. We believe the evidence clearly shows that defendant, the employee in charge of the station where the machines were located, operated the machine. Evidence that gambling took place was presented in the form of Mr. Carraway's testimony of cashing in his points for money from defendant. We overrule this assignment of error.

[5] Finally, defendant argues that the trial court erred in its charge to the jury, specifically erring in failing to give the proposed jury instructions submitted by defendant and in failing to give jury instructions on the definition of "betting." We find the trial judge properly instructed the jury on the law arising on the evidence in this case. *State v. Moore*, 335 N.C. 567, 440 S.E.2d 797, *cert. denied*, —— U.S. ——, 130 L.Ed.2d 174 (1994).

Defendant's remaining assignment of error is abandoned. N.C.R. App. P. 28(b)(5).

No error.

Chief Judge ARNOLD and Judge MARTIN, MARK D. concur.